**In re the Marriage of T.L.I.,
Respondent,**

v.

**D.A.I., Appellant.**

**No. 58069.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 16, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1991.

Application to Transfer Denied
July 23, 1991.

Charles Clifford Schwartz, Jr., James C. Ochs, St. Louis, for appellant.

Allen H. Zerman, Clayton, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, D.I., appeals the January 29, 1990, order of the Circuit Court of St. Louis County modifying a March 6, 1987, decree of dissolution dissolving appellant's marriage to respondent, T.I., appellant's former husband. We modify the order of the trial court and affirm.

The marriage of appellant and respondent was dissolved on March 6, 1987. There were two children born of the marriage: Justin, then age 3, and David, then age 1. By the terms of the decree of dissolution, appellant was to have custody of the children. Respondent was responsible for paying $175.00 per child per month in support but enjoyed unlimited visitation with reasonable notice. Respondent also was to have one week per month of temporary custody of the children.

Soon after the decree was entered, appellant began cohabiting with Tom L. Mr. L. was married, but separated, when he began cohabiting with appellant. Mr. L.'s marital status had not changed at the time of the hearing below, although there is some indication in the record that his divorce was pending.

Respondent began living with Helen I. shortly before the decree of dissolution was issued. At the time of the hearing, respondent and Helen I. had married.

More than a year passed after the parties' dissolution without notable difficulties. Then, in September of 1988, appellant and Tom L. moved to Crystal City, Missouri, to open a pet shop.[1] Allegations against respondent soon followed.

On November 15, 1988, appellant instituted a child abuse action in Jefferson County alleging that respondent had held a knife to Justin's head and held Justin upside down in the bath. Appellant claims she instituted the action based on allegations made by the children. On December 13, 1988, the trial court issued an order based on the stipulation, agreement and consent of the parties whereby respondent was temporarily subjected to supervised visitation. Certain members of respondent's immediate family were permitted to serve as supervisors. The order also called for a Dr. Gennari to interview and observe the parties and to note how they reacted with the children. It was during the pendency of this petition that respondent filed his motion to modify, requesting custody of the children and child support.

On January 15, 1989, the children were picked up at appellant's home by respondent's sister, N.I., to exercise temporary

---

1. The record reveals that the pet shop closed approximately one year and one month later. Soon after the decision was made to close the shop, the appellant was charged with cruelty to animals. The record does not reveal what manner of cruelty was alleged in the charges, nor does it indicate any further proceedings being taken with relation to the charges.

custody with the respondent. N.I. testified at trial that she had a "painting party" at her home on that day attended by the respondent, Helen I. and the mother of respondent and N.I., P.I. All of these witnesses testified that the children were in N.I.'s home the entire day and were never alone with respondent. At the end of the day, N.I. took the children to P.I.'s home where they were picked up by appellant.

Two days later, appellant took the children to St. John's Mercy Hospital for an examination. Appellant claimed that the children had black stools and that David could barely sit still when you "wiped his bottom." She also testified that she and a friend examined Justin's "bottom" before deciding to go to the hospital.

At the hospital, Justin told a social service worker that his father had "put a stick in [his] butt" while he was visiting his father on January 15, the day of the "painting party." The physical examination conducted at the hospital revealed excessive tenderness in the child's rectal area. Dr. Gennari, the psychiatrist appointed by the December 13, 1988, consent order, testified that when he asked Justin to describe the stick used, Justin described it as about ⅛ to ¼ inch long and "about as wide as a splinter." Dr. Gennari further stated that, at this point, David said that the incident never happened, prompting an angry response from Justin. Despite this, Penny Crumpton, an investigator with the Division of Family Services who was present when these comments were made, determined that, based on the hospital report, abuse had occurred but that the perpetrator could not be determined.

Other "hotline" calls to the Division of Family Services soon followed. Each of these calls were made by appellant and found to be unsubstantiated by the Division of Family Services. In the course of investigating one claim, a Division of Family Services' Agent was told by Justin that the bruise his mother called about had not been caused by his father, but that his mother had told him to blame it on his father.

The hearing on the motion to modify commenced on December 12, 1989, and continued the next day. At the hearing, Dr. Gennari testified that, after interviewing and observing the parties, he recommended that respondent receive custody of the children. Dr. Gennari testified that appellant suffered from a "borderline personality disorder" indicating a chronic and long-term pattern of malfunction. Appellant had strong obsessive traits, exhibited severe mood swings, extreme rage, unpredictability and excessive dependency on male figures. Dr. Gennari further testified that appellant saw the children as extensions of herself and her needs and did not see them as separate individuals, but as "pawns" to continuously bring allegations against respondent. Finally, Dr. Gennari testified that, while respondent had some problems with anger and intimacy, he was not violent or sadistic. On questioning by respondent's attorney, Dr. Gennari testified that the chance of respondent committing sexual abuse was about "nil."

Further testimony revealed that bruises did not start appearing on the children until after Mr. L. began living with the appellant and that, on one occasion, Mr. L. gave David a black eye. On another occasion, when respondent picked up the children, David was soaked with diarrhea and had dry diarrhea on his leg.[2]

The trial court issued its order on January 29, 1990, granting respondent's motion to modify by awarding custody to respondent, ordering appellant to pay child support to respondent and extremely limiting appellant's visitation. This appeal followed.

Appellant first contends that the order of the trial court is "fatally defective" in that the trial court's order stated that the court was going to retain jurisdiction and review its order on September 14, 1990.

2. Further testimony revealed that, when appellant and Tom L. moved to Crystal City, hundreds of roaches were discovered in their old apartment under the waterbed. In addition, bird droppings, apparently from a pet bird allowed free reign of the apartment, were found on the living room floor.

In *Lacher v. Lacher,* 785 S.W.2d 78 (Mo. banc 1990), the Missouri Supreme Court held that such attempts to retain jurisdiction are "without effect." *Lacher,* 785 S.W.2d at 81. The trial court lost jurisdiction of the case 30 days after issuance of its order. Rule 75.01; *Lacher,* 785 S.W.2d at 81. Once the order of the trial court is final, a motion to modify under RSMo § 452.410 is required to bring custody of the children under the jurisdiction of the trial court. *Id.*

Appellant contends that the trial court's attempt to retain jurisdiction voids the judgment or, at the very least, makes the judgment voidable. We disagree.

There is nothing in *Lacher* indicating that the inclusion of such language voids the judgment. To the contrary, the court merely noted that such language was "without effect." *Id.* at 81. As a practical matter, the language purporting to allow the court to retain jurisdiction, was simply excess language. A judgment which goes beyond the trial court's jurisdiction may be valid if, by disregarding the surplusage, the remainder of the judgment may be separated and treated as dispositive of the controversy. *Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734, 740 (Mo.App., W.D. 1981). This court may, consequently, affirm the judgment of the court if the excess language is separable, does not affect the finality of the judgment and if the judgment is otherwise a proper subject for appellate disposition within the issue's frame. *Id.* The language of the trial court attempting to retain jurisdiction clearly can be stricken within this framework.

Accordingly, that portion of the order retaining jurisdiction is null and void and stricken from the order as surplusage. Point denied.

The remaining points contained in appellant's brief allege that the trial court made various fact based errors. Some of appellant's allegations borderline so closely on pure absurdity that Rule 55.03 of the Missouri Civil Rules is brought to mind.

For example, in one of her points on appeal the appellant alleges that the trial judge ordered the change in custody due to a strong dislike of Tom L. and not based on the evidence presented below. Appellant also alleges that the reason the trial court changed custody was to "punish" the appellant for living with another, outside of marriage. We have reviewed the transcript of the hearing below with great care and we have located no evidence whatsoever indicating any bias on the part of the trial judge. Instead, we find the transcript replete with evidence supporting the decision of the trial judge. We find that the trial court order is supported by substantial evidence and is not against the weight of the evidence. As there would be no precedential value in reviewing these points, we affirm these points pursuant to Rule 84.-16(b).

Affirmed as modified.

CRIST and AHRENS, JJ., concur.