Franciska WILD, Petitioner/Appellant,

v.

Thomas HOLMES, Respondent/Respondent.

No. 62818.

Missouri Court of Appeals, Eastern District, Southern Division.

Feb. 8, 1994.

John P. Heisserer, Kathleen A. Wolz, Cape Girardeau, for petitioner/appellant.

Walter S. Drusch, Cape Girardeau, for respondent/respondent.

GRIMM, Presiding Judge.

In a motion to modify, mother, primary custodian[1] of child born January 11, 1989, sought: (1) permission to remove the child from Missouri to Ohio, and (2) additional child support. The trial court denied permission to remove child. Although the trial court increased the child support, it awarded less than the presumed child support amount.

Mother appeals. We affirm the denial of permission and reverse and remand the child support determination.[2]

## I. Removal of Child

For her first point, mother contends that the trial court erred in denying her permission to remove the minor child from Missouri because "the court's action unreasonably restricts the economic mobility of [mother] and because the order is against the weight of the evidence or alternatively misapplies the Missouri law in that all of the recognizable factors for determining the propriety of relocation indicate that such a move

1. The parties have joint legal custody of child.

2. Mother's motion to strike father's affidavit, as well as father's introduction to his statement of

in this case would be consistent with the best interest of the minor child."

In this court-tried matter, our review is limited. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We set aside a trial court's judgment only if we have "a firm belief that the decree or judgment is wrong." *Id.* On conflicting evidence, we are required to defer to the trial court. *Id.*

Further, it is the prerogative of the trial court to determine the credibility of the witnesses. Rule 73.01(c)(2). The trial court is granted broad discretion, and we will affirm its judgment even if there is evidence which would support a different conclusion. *American Family Mut. Ins. v. Huddelson,* 765 S.W.2d 721, 722 (Mo.App.E.D.1989).

Here, mother's evidence was sufficient to justify the trial court granting her permission to remove child. Mother, age 24, had been unemployed for approximately five months. She had sought employment in the Cape Girardeau area; however, the openings she knew of paid only $15,000 to $16,000. She obtained a job in Ohio as a restaurant manager. Her starting salary was $18,000, and she expected a raise to $28,000 in a few months. Father believed that the move to Ohio was mother's effort to earn a good salary and help provide for the child.

Mother had found a three-bedroom apartment in an apparently nice neighborhood. She had arranged for a nanny and had pre-enrolled child in a Baptist preschool.

On the other hand, father's evidence opposing the move was sufficient to justify the trial court's denial of permission. During the first five months of child's life, father had child overnight every other night, as well as every other weekend. After that, mother wanted child every night, so father had child two evenings a week from 5 to 8 and every other weekend until mother moved to Ohio.

Mother's proposed move is a nine hour drive from Cape Girardeau. Father does shift work on a 28–day rotation; every other

facts, is sustained. Both contain matters beyond the record before the trial court.

weekend, he is off three days. To visit child on those weekends, husband estimated the cost of each trip at $300 to $400.

The parents of both mother and father, and other close relatives, live in the Cape Girardeau area. No relatives of child live in Ohio.

Mother relies primarily on *Michel v. Michel,* 834 S.W.2d 773 (Mo.App.S.D.1992). In *Michel,* the court recognized four factors as "particularly relevant in determining the propriety of a relocation by a custodial parent." *Id.* at 777. We apply those factors here.

First, the prospective advantages of the move in improving the general quality of life for the custodial parent and child. Economically, parent and child would be better off if the move were permitted. Whether the general quality of life would improve in other areas is debatable, but nothing indicates it would diminish. This factor favors mother.

Second, the integrity of the custodial parent's motives in relocating. Nothing impugns mother's motive; she seeks to improve her financial condition. This factor favors mother.

Third, the integrity of the noncustodial parent's motives for opposing relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support. Father's apparently strong connection with his son appears to be his motive for opposing relocation.

There was, at best, conflicting evidence concerning any attempt by father to secure a financial advantage. Mother's only testimony on this issue related to her initial conversation with father about the move. After telling father of her proposed move, mother said father replied: "Well, you know, I'm not going to pay child support for a kid I don't see. You're going to try to take my son away from me, and I'll never see him again." Father did not remember making these statements, but stated "I might have."

Concerning child support, father testified that mother said she "was going to ask the judge to drop all child support." Father told her that was not fair; mother told him "just to come up with a figure." He offered to pay $150 per month instead of the $234 he was paying. Also, father said that mother told him that she had asked her attorney to drop the request for additional child support. Mother did not challenge this testimony. Overall, this factor favors father.

The fourth factor concerns the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted. Realistically, considering father's working conditions and income, as well as the distance involved, father's visitation would be severely curtailed. This factor favors father.

As our review indicates, the entire four factors favor neither mother nor father. As a result, we do not have "a firm belief that the decree or judgment is wrong." Point denied.

## II. Violation of § 452.377

■ For her second point, mother alleges the trial court erred in making a specific finding that she violated § 452.377 [3] because "the statute only requires that the petitioning parent seek permission for removal within 90 days, which all parties admitted [mother] had done and because in any event, [father's] counsel waived the time limitation in open court."

In its findings of fact, the trial court stated, "With regard to the proposed relocation, the Court finds that [mother] has violated the clear and mandatory terms of Section 452.377, ... in that, she has changed the residence of said minor child from the State of Missouri to the State of Ohio without seeking the prior permission of this Court and before a hearing was granted to [father]. Such is a clear violation of Section 452.377."

Section 452.377 provides:

A person entitled to custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or

---

3. All statutory references are to RSMo 1986.

with the written consent of the parties with custody or visitation rights. . . .

Mother filed her motion to remove the child on March 18, 1992. She moved to Ohio on April 17, 1992. The trial court conducted its hearing on July 8, 1992. At the hearing, mother's attorney raised this issue:

> [MOTHER'S ATTORNEY]: Judge, if I could just add to that, that the statute provides in this case she must obtain the Court's permission within 90 days. I think we're about on the 80th day or so; and I just want to make it clear that she's done everything that she can to get that permission within the time.
>
> THE COURT: I understand.
>
> [MOTHER'S ATTORNEY]: So it's ten days. It may take longer than that. I don't want to put her in contempt of court because we've technically gone over the time.
>
> THE COURT: Uh-huh.
>
> [MOTHER'S ATTORNEY]: That's my only concern.
>
> THE COURT: Well,—
>
> [FATHER'S ATTORNEY]: Well, okay. We won't bring that up then.
>
> THE COURT: It shouldn't be a problem because we're in court now, and if there's—
>
> [FATHER'S ATTORNEY]: We'll waive the time then. Let's don't worry about that.
>
> THE COURT: Okay. You waive the time limit?
>
> [FATHER'S ATTORNEY]: Yes.
>
> THE COURT: And besides that, if it was a problem, it would have been the Court's fault and not yours. You've done everything you could.

Father's written consent was not obtained before the hearing.

However, at the hearing, father waived any objection to the ninety day time limit. Further, the trial court acknowledged that if the time limit was a problem, it is "the Court's fault and not yours." The trial court's contrary finding of fact is stricken.

## IV. Child Support Award

■ For her third point, mother alleges the trial court erred "in finding that the presumed child support amount calculated under Form 14 was unreasonable in that such finding was against the weight of the evidence adduced and because the court could not rely on the figures in the worksheet provided in light of its order denying [mother's] request to relocate. . . ."

The legal file contains only one Form 14. This form reflects mother's monthly gross income is $2,333.33, or $27,996 annually. This is the income mother anticipated receiving if permitted to remove child to Ohio.

The form indicates father's monthly gross income is $2,905.76, or $34,869.12 annually. This is consistent with father's Statement of Income and Expenses. The form reflects work related child care costs of $250.00. Utilizing these figures, the Form 14 indicates father's presumed child support is $493.14.

The trial court found, "[i]t would be unreasonable to follow the child support guidelines" to increase the support to $493.00. It therefore modified the child support from $234.00 to $375.00.

The trial court's calculations were based on mother's projected income and expenses in Ohio. However, the trial court denied the removal of child to Ohio, effectively denying mother the ability to earn the income the court considered in setting the child support.

The only testimony in the record as to mother's earning ability in Missouri reflects an annual salary of $15,000 to $16,000. When that sum is substituted for the erroneous $27,996, Form 14 reflects a presumed child support amount of $761.50. Even if the work related child care costs of $250.00 are deleted, father's presumed child support is $588.43.

The trial court erroneously determined that the presumed child support was $493.00. Based on the evidence, it appears that it is at least $588.43. Therefore, we reverse and remand the child support award. The trial court is directed to enter a child support award based on the testimony that was before it on July 8, 1992. The award shall be

effective as of September 2, 1992, the date of the trial court's order.[4]

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.

---

4. On October 29, 1992, the trial court signed a new order with additional findings of fact and conclusions of law. The trial court dated this order September 16, 1992, and referred to it as "Nunc Pro Tunc." It is doubtful that the order qualifies as a nunc pro tunc order.

Rule 74.06(a) permits correction of clerical mistakes and errors. However, during the pendency of an appeal, such mistakes may only be corrected with leave of the appellate court. Rule 74.06(a).

Mother filed her notice of appeal on October 7, 1992. Leave of this court was never sought nor granted. In its absence, the trial court lacked authority to enter the October 29 order.