Tonja Lee LAVALLE, n/k/a Feingold, Petitioner/Respondent,

v.

Brian Allen LAVALLE, Respondent/Appellant.

No. ED 75177.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 2000.

Application for Transfer Denied March 21, 2000.

Richard J. Eisen, Michelle J. Spirn, Ziercher & Hocker, P. C., Clayton, for appellant/cross-respondent Brian Lavalle.

Lisa A. Herder, Herder & Herder, P.C., St. Louis, for respondent/cross-appellant.

Limbaugh, Russell, Payne & Howard, Curtis O. Poore, Cape Girardeau, for respondent/cross-appellant Tonja Lee Lavalle.

MARY K. HOFF, Judge.

Brian Allen Lavalle (Father) appeals from the trial court's "Findings of Fact, Conclusions and Judgment of Modification of Decree of Dissolution" (Judgment), which awarded Tonja Lee Lavalle [1] (Mother) physical custody of the parties' minor child (Daughter), allowed Mother and Daughter to relocate to the State of Maryland, set forth a visitation schedule, and increased Father's child support obligation to $537.00 per month. Mother appeals from the Judgment insofar as it limited to two years the period for relocation of Daughter from the State of Missouri to the State of Maryland. We consolidated these appeals. We strike the portion of the Judgment limiting to two years the relocation of the parties' minor child and, as so modified, affirm the Judgment.

The parties were married in 1990 and had one child, Daughter, born on March 30, 1994. The parties' marriage was dissolved on November 2, 1995. In relevant part, by the Judgment and Decree of Dissolution: Separation Agreement (Decree), the court awarded the parties joint legal custody and shared physical custody of Daughter; prohibited Daughter's removal "from the State of Missouri for more than ninety (90) days, without prior specific authorization of the Court or the written consent of both parties"; directed Father to pay child support of $500.00 per month, until Daughter either attended kindergarten or was in day care for less than ten consecutive workdays at which time the support obligation decreased to $365.00 per month; and set forth a detailed visitation schedule.

1. Tonya Lee Lavalle has remarried and is now known as Tonya Lee Feingold.

On December 22, 1997, Mother filed a "Motion to Modify for Removal of the Minor Child from the State of Missouri and for Child Support" (Original Motion). Father filed a "Cross–Motion to Modify" (Cross–Motion). In his Cross–Motion, Father sought modification of the Decree to award him the primary physical and legal custody of Daughter, "subject to appropriate visitation and temporary custody with" Mother, and to award him a reasonable sum of child support. Mother subsequently filed a "First Amended Motion to Modify for Removal of the Minor Child from the State of Missouri and for Child Support" (Amended Motion). In her Amended Motion, in relevant part, Mother asked for modification of the Decree: allowing her to remove Daughter from Missouri; granting Mother primary legal and physical custody of Daughter "subject to reasonable and liberal temporary custody periods to" Father; setting forth provisions for the expense and transportation of Daughter during those temporary custody periods; directing Father to pay child support "in accordance with the Missouri Child Support Guidelines, retroactive to the date of filing"; and requiring Father to pay Mother's reasonable attorney's fees and costs.

It is undisputed that at the time the motions were filed: both parties had remarried; Mother's husband had accepted a clinical associate position in the surgery branch of the National Cancer Institute in Bethesda, Maryland that began in July 1998; Father lived in Illinois with his wife and stepchildren; and the majority of the parties' extended families lived in either New Madrid or Kewanee, Missouri.

In August 1998, the trial court conducted an evidentiary hearing on Father's Cross–Motion and on Mother's Amended Motion. In its Judgment, the trial court granted in part and denied in part each of those motions.

With respect to the relocation and custody requests, the trial court found there was a change in Mother's circumstances and the best interests of Daughter required that Mother "be permitted to remove the minor child from the State of Missouri and establish their residence in the State of Maryland." The trial court expressly noted it must compare "the geographical, material and social aspects of the alternative places of residence and, more importantly, all aspects of the alternative custody offered by each parent." The trial court concluded: Maryland "will have professional advantages for [Mother]'s current husband and ... will improve in the future, if not immediately, the general quality of life of [Mother] and the minor child"; Mother's present husband had demonstrated "a need that cannot be met in the home community"; "[n]othing impugns [Mother]'s motives in relocating, for she has not interfered with either [Father]'s rights to temporary physical custody with, or telephone access to, the minor child"; "[n]othing impugns [Father]'s motives for opposing [Mother]'s relocation, and ... notwithstanding the distance and costs of transportation to and from Maryland, any relocation by [Mother] to the State of Maryland would not severely or unnecessarily curtail [Father]'s temporary custody with the minor child."

Therefore, the trial court awarded Mother primary physical custody while retaining the parties' joint legal custody of Daughter. The trial court expressly stated that "effective September 6, 1998, [Mother] shall be, and hereby is, permitted to remove the minor child from the State of Missouri for a period of two (2) years and, during the said period, establish the residence of the minor child in the State of Maryland."

The trial court also set forth temporary physical custody periods for Father. The provisions relevant to this appeal are as follows:

4. Beginning upon the minor child's entry into kindergarten, [Father] shall be, and hereby is, awarded temporary physical custody of the minor child in the state of [Mother]'s residence with

the minor child at reasonable times and for reasonable intervals, upon reasonable notice to [Mother], which, in all events, shall include the following:

(a) President's Day weekend from 3:00 p.m. Friday until 7:30 a.m. Tuesday;

(b) Martin Luther King Day weekend from 3:00 p.m. Friday until 7:30 a.m. Tuesday;

(c) Memorial Day weekend from 3:00 p.m. Friday until 7:30 a.m. Tuesday;

(d) Labor Day weekend from 3:00 p.m. Friday until 7:30 a.m. Tuesday.

5. Beginning upon the minor child's entry into kindergarten, [Father] shall be, and hereby is, awarded temporary physical custody of the minor child outside or, at his option, inside the state of [Mother]'s residence with the minor child at reasonable times and for reasonable intervals, upon reasonable notice to [Mother], which, in all events, shall include the following:

(a) Thanksgiving vacation from 3:00 p.m. Wednesday until 10:00 a.m. Monday;

(b) Spring vacation from 3:00 p.m. on the final day of school prior to commencement of the vacation period until 10:00 a.m. on the day on which school resumes upon conclusion of the vacation period;

(c) In even numbered years, Christmas vacation from 3:00 p.m. December 23 until 7:00 p.m. December 31;

(d) In odd numbered years, Christmas vacation from 10:00 a.m. on December 26 until 10:00 a.m. January 2;

(f) [sic] From 5:00 p.m. June 10 until 5:00 p.m. July 15 inclusive and from 5:00 p.m. July 30 until 5:00 p.m. August 24 inclusive. ([Mother] shall have exclusive physical custody of the minor child from 5:00 p.m. July 15 until 5:00 p.m. July 30 inclusive).

The trial court directed that Mother pay "[a]ll costs for transportation of the minor child between the state of [Mother]'s residence and the state of [Father]'s residence for the exercise by [Father] of his periods of temporary physical custody . . . under paragraph[ ] . . . 5 hereof." Furthermore, the trial court provided that "all costs for transportation of the minor child between the state of [Mother]'s residence and the state of [Father]'s residence for the exercise by [Father] of his [other] periods of temporary physical custody with the minor child shall be paid by [Father]."

With respect to child support, the trial court concluded approximately three years had passed since entry of the Decree and the amount payable by Father under the Missouri Child Support Guidelines had increased at least twenty percent, constituting a change in circumstances making the amount paid by Father unreasonable. The trial court calculated the amount of child support now due as follows: Father had income of $3,816.00 per month; Mother had $0 income; the chart set the monthly child support amount at $597.00; and there should be a ten percent visitation adjustment or a total of $60.00 per month subtracted from the chart amount. Therefore, the trial court ordered Father to pay Mother $537.00 per month, beginning September 1, 1998. Upon concluding application of the Missouri Child Support Guidelines (Rule 88.01) was unjust and inappropriate, the trial court required "the parties [to] continue to share equally any medical, hospitalization and dental expenses incurred for the minor child which are not covered or paid in full by any policy of medical and hospitalization insurance."

In support of these conclusions, the trial court found that, as of the evidentiary hearing in August 1998, Mother was unemployed, had no gross wages, and had monthly expenses for her and Daughter totaling $3,353.00. The trial court further found Father had, as of the date of the evidentiary hearing, gross wages of $41,000.00 (or approximately $3,416.00 per month), plus an automobile allowance of $400.00 per month, and monthly expenses for him and Daughter totaling $3,940.00.

These consolidated appeals followed the entry of Judgment.

In his appeal, Father first urges the trial court erred in awarding primary physical custody of Daughter to Mother and allowing Mother to relocate Daughter's residence from Missouri to Maryland in that those decisions constitute an erroneous application of the law and are against the substantial weight of the evidence. In his second point, Father argues the trial court erred in limiting him to eight visits per year with Daughter, and in requiring four of those visits in Maryland, because such a schedule is not in Daughter's best interest and is against the weight of the evidence. In his third point, Father contends the trial court erroneously applied the law and made a decision against the substantial weight of the evidence when it increased the child support paid by Father after imputing no income to Mother. In her sole point, Mother argues the trial court lacks jurisdiction to limit to a two year period the relocation of Daughter to Maryland because the trial court loses jurisdiction once Daughter lives in Maryland for more than 180 days.

We must affirm the trial court's Judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976); *Gal v. Gal,* 937 S.W.2d 391, 392 (Mo.App. E.D.1997) (child support modification); *Larkins v. Larkins,* 921 S.W.2d 152, 153 (Mo.App. E.D.1996) (modification of visitation); *McElroy v. McElroy,* 910 S.W.2d 798, 802 (Mo.App. E.D.1995) (relocation and modification of custody of minor child). We defer to the trial court where there is conflicting evidence, and will affirm a judgment "even if there is evidence which would support a different conclusion." *Wild v. Holmes,* 869 S.W.2d 917, 918 (Mo. App. E.D.1994). We set aside a judgment only if we have a firm belief the judgment is wrong. *Id.*

Importantly, the trial court has broad discretion in deciding visitation and custody issues. *McElroy,* 910 S.W.2d at 805. We accord the trial court's custody determination great deference. *Wilson v. Wilson,* 873 S.W.2d 667, 670 (Mo.App. E.D.1994). We will not overturn a decision resolving custody and visitation issues unless it is not in the child's best interest. *Larkins,* 921 S.W.2d at 153. The trial court determines what is in the best interest of the child and this Court determines whether there is evidence to support that assessment. *Riley v. Riley,* 904 S.W.2d 272, 275 (Mo.App. E.D.1995). When an appellant challenges a decision as against the weight of the evidence, as in Father's appeal, "we view the evidence and reasonable inferences from the evidence in the light most favorable to the judgment and disregard all contrary evidence." *Maher v. Maher,* 951 S.W.2d 669, 673 (Mo.App. E.D.1997).

*RELOCATION OF MINOR CHILD*

Section 452.410 RSMo 1994 allows a court to modify a prior custody decree if it "finds, upon the basis of facts that have arisen since the prior decree . . ., that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." In determining whether it is proper to permit a parent to remove a child from this state, we consider four factors:

(1) whether the prospective advantages of the move will improve the general quality of life for the parent and the child; (2) the integrity of the . . . parent's motives in relocating; (3) the integrity of the [other] parent's motives for opposing the relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the [other] parent's rela-

tionship with the child if relocation is permitted.

*Puricelli v. Puricelli,* 969 S.W.2d 289, 296 (Mo.App. E.D.1998). Significantly, "the paramount concern is the best interest of the child." *Id.* These factors are also relevant when considering the modification of custody in the relocation context. *Maher,* 951 S.W.2d at 673.

Having carefully considered the record available on appeal in light of the relevant principles, we find the best interest of Daughter is served by her relocation to Maryland with Mother.

As to the first factor, the trial court determined the relocation would result in professional advantages for Mother's husband, and will improve, although perhaps not immediately, the general quality of life of Mother and Daughter. The trial court further noted Mother was not going to work outside the home, the general quality of life of Mother and Daughter would not diminish by the move to Maryland, Mother's husband had demonstrated a need that cannot be met in the St. Louis area due to both the unique opportunity available through the National Cancer Institute and the absence of tumor immunology research in St. Louis.

The evidence supports these determinations. The testimony reveals Mother, who was pregnant at the time of the hearing, will be staying home rather than working outside the home. In Maryland Mother and Daughter live with Mother's husband in a three bedroom, two bathroom apartment similar to but smaller than the three bedroom, two bathroom home they had in St. Louis. The apartment complex where they live in Maryland has a playground, swimming pool, and numerous families with small children. Daughter has her own bedroom, with a bathroom; has access to gymnastics and swimming lessons similar to those she had in St. Louis; and is enrolled in a preschool five mornings a week that is within a short walking distance from the apartment complex.

Testimony further supported the following. Mother's husband was a second year resident in surgery at Washington University's School of Medicine when he married Mother and accepted the clinical associate position at the National Cancer Institute of the National Institutes of Health. Washington University requires its surgical residents to complete five years of clinical studies, plus two years of research. Surgical residents at Washington University usually pursue the research requirement after the second or third year of residency, and are not required to complete that requirement on campus. Mother's husband's position at the National Cancer Institute focuses on tumor immunology and cancer, a focus not then available at Washington University. The program at the National Cancer Institute provides a unique experience and opportunity through the greater number of experts in cancer research and cancer treatment available there; its patient population, which is willing to participate in clinical research projects; and its greater funding resources.

There is no dispute that this position will enhance Mother's husband's career opportunities even though presently his greater annual salary is actually closer to his lower annual salary in Missouri due to the higher cost of living in Maryland. It is also undisputed that Mother's husband's parents will provide some financial assistance.

■ When the evidence does not indicate the move would diminish the quality of life of the parent and child, this factor favors the move. *See Wild,* 869 S.W.2d at 919.

With respect to the second factor, the trial court found Mother's marriage to her husband and her pregnancy soon after that marriage were not premeditated by Mother to gain "her exit from St. Louis"; and she had not interfered with Father's telephonic or physical access to Daughter. The testimony indicates Mother acknowledges and supports the close relationship between Father and Daughter; and Moth-

er's desire to be in Maryland arises out of her desire to be with her husband and not out of a desire to separate Father and Daughter.

Finally, the trial court concluded nothing impugned Father's opposition to the relocation; and the relocation "would not severely or unnecessarily curtail [Father]'s temporary custody with the minor child." The evidence indicates Father's opposition was motivated by his desire to be with Daughter more frequently and to maintain the frequency of Daughter's visits with her parents' extended families. There is no indication Father opposed relocation for financial advantage or other improper motive.

The visitation awarded by the trial court expressly set forth minimum visitation periods including an expanded summer visitation period and various extended holiday visitation periods. Additionally, the trial court's visitation provisions provided for visits within and outside the State of Maryland "at reasonable times and for reasonable intervals, upon reasonable notice to [Mother]." Despite the parties' occasional disputes regarding the time or place for exchanging custody of Daughter, the record reveals a consistent effort to permit Daughter to maintain a close relationship with both parents through personal and telephone contact. Moreover, the testimony of both Mother and her husband reveal their recognition of the need to provide Daughter with meaningful contact with her Father.

While Father points to evidence he believes supports findings contrary to those of the trial court, our review of the relocation decision is limited. *Maher*, 951 S.W.2d at 673. The trial court did not err in applying the law or in considering the evidence to reach its decision permitting the relocation. Furthermore, the weight of the evidence supports that decision.

To the extent this point challenges the trial court's decision to award primary physical custody to Mother, we further conclude "the trial court could properly find that the distance involved [in the relocation] would necessarily render [joint physical custody] arrangements impractical for the foreseeable future." *Id.* Father's point one is denied.

### VISITATION SCHEDULE

■ In his second point, Father challenges as too limited the visitation set forth in the Judgment. Father contends the visitation periods do not permit meaningful visits between Father and Daughter, and impose an undue financial hardship on him.

■ Section 452.400.2 RSMo Cum. Supp.1997 provides that a court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." As noted earlier, we will not overturn the trial court's modification decision regarding visitation unless the judgment is not in the child's best interests. *McElroy*, 910 S.W.2d at 805. Importantly, the fact a visitation schedule does not provide visitation between a distant parent and child "of the same frequency or duration as may have been feasible when they were located in the same city" does not constitute a basis for reversal. *Maher*, 951 S.W.2d at 676.

We have held that when a child is distant from a parent, a scheduled visitation period should not be less than two consecutive days and no visitation requiring travel by the child should be shorter than three days. *Riley*, 904 S.W.2d at 279. The visitation provisions relevant to this appeal state that Father's minimum holiday visits with Daughter in Maryland are each over three days long; and each of the other specified visitations, which may require travel by Daughter, range in length from at least four days to over thirty days.

While Father relies on *Maher*, *supra*, and *McElroy*, *supra*, to support his position the visitation schedule established by the trial court is erroneous, we find those cases unpersuasive under the circum-

stances in this case. In *Maher* and in *McElroy* we concluded visitation schedules established by the trial court which specified visitation of from twelve to twenty-four hours on certain holidays, plus two weekends per month, were inappropriate for parents and children separated by some distance. *Maher,* 951 S.W.2d at 677–78; *McElroy,* 910 S.W.2d at 805. We also found error in a requirement that either the parent or the child travel by airplane twenty-six times a year. *Maher,* 951 S.W.2d at 676. Additionally, we found error in a visitation schedule not encompassing extended school breaks and three-day weekends. *McElroy,* 910 S.W.2d at 805.

These characteristics are not part of the visitation schedule at issue here. The specified holiday visits are for a period greater than twenty-four hours, and there is no requirement of weekend visitation every other week. The frequency of travel required annually by either Father or Daughter is not excessive. Moreover, the visitation schedule incorporates visits during extended school breaks and three-day weekends.

We have also recognized that distant visitation problems can be ameliorated by "allowing the non-custodial parent to exercise visitation in the child's city whenever his schedule permits, limited solely by a requirement of specified notice." *Maher,* 951 S.W.2d at 677. Such a provision is part of the visitation schedule in this case in that the trial court states Father is "awarded temporary physical custody of the minor child ... at reasonable times and for reasonable intervals, upon reasonable notice to [Mother]."

 To the extent Father contends the schedule imposes on him an undue financial burden requiring reversal, we disagree. A trial court has broad discretion in apportioning the expense of visitation. *Larkins,* 921 S.W.2d at 153; *Stanton v. Abbey,* 874 S.W.2d 493, 501 (Mo. App. E.D.1994). We review such decisions "for a manifest abuse of that discretion." *Stanton,* 874 S.W.2d at 501. Here, the trial court ordered Mother to pay the costs of transporting Daughter between Mother's and Father's residences for the visitation periods set forth in Paragraph 5 and directed Father to pay the Daughter's transportation costs between Mother's and Father's residences for other visitation periods. Paragraph 5 specified certain periods of visitation outside the State of Maryland. The other visitation required by the trial court's Judgment requires travel by Father to Maryland. Under the circumstances presented, it is not unreasonable for Father to pay the costs of visitation within the minor child's home state. The trial court's apportionment of the expense of visitation does not constitute a manifest abuse of discretion.

We conclude the modified visitation schedule established by the trial court serves the best interests of Daughter and provides for meaningful visits between Father and Daughter. Moreover, the evidence supports that modification. Father's point two is denied.

### CHILD SUPPORT INCREASE

 For his third point, Father argues the trial court erred by increasing the child support without imputing income to Mother.

Section 452.370.1 RSMo Cum.Supp. 1997 provides that a child support order "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." In determining whether or not a substantial change in circumstances has occurred, the statute directs the court to consider "all financial resources of both parties, including ... the earning capacity of a party who is not employed." Section 452.370.1 RSMo Cum.Supp.1997. A prima facie showing of such changed circumstances is made when "the application of the child support guidelines and criteria set forth in section 452.340 ... would result in a change of child support from the existing amount by twenty percent or

more...." Section 452.370.1 RSMo Cum. Supp.1997.

The trial court is vested with wide discretion in modifying child support. *Rothfuss v. Whalen,* 812 S.W.2d 232, 237 (Mo.App. E.D.1991). This discretion includes imputing "income to an underemployed or unemployed custodial parent," such as Mother here. *Gal,* 937 S.W.2d at 397. Such imputation may occur only under "appropriate circumstances" and the determination of "[w]hat constitutes 'appropriate circumstances' will depend on the facts and must be determined on a case-by-case basis." *Stanton,* 874 S.W.2d at 499. Factors to consider in deciding whether or not to impute income to a custodial parent are:

(1) the age, maturity, health, and number of children in the home; (2) the custodial parent's employment history, including recency of employment and earnings, as well as the availability of suitable employment; (3) the age and health of the custodial parent; (4) the availability of appropriate child-care givers; (5) the relationship between the expense of child-care givers and the net income the custodial parent would receive; (6) the cost, if any, for transportation, suitable clothing, and other items required for the custodial parent to have the imputed employment; (7) the custodial parent's motivation or reasons for being at home; and (8) the adequacy of available resources if the custodial parent remains at home.

*Woolsey v. Woolsey,* 904 S.W.2d 95, 99 (Mo.App. E.D.1995). We have upheld a trial court's determination that no income should be imputed to a custodial parent. *Gal,* 937 S.W.2d at 397; *In re Marriage of Clarke,* 950 S.W.2d 11, 13–14 (Mo.App. E.D.1997); *see also Thomas v. Thomas,* 989 S.W.2d 629 (Mo.App. W.D.1999); *Quackenbush v. Hoyt,* 940 S.W.2d 938 (Mo. App. S.D.1997).

It is clear from the record that Mother was pregnant at the time of the evidentiary hearing, which was conducted within three months of the move to Maryland. Therefore, Mother was going to need to provide care for both an infant and the then-four year old Daughter. The record reveals Daughter is a generally healthy child. Mother testified that she had been a "trauma intensive care unit nurse," and changed to a different job after Daughter's birth so she could pick her up from and take her to daycare and participate in Daughter's daycare experience. In December 1997, Mother began working part-time until the hospital could find a replacement and, when that occurred at the end of February 1998, Mother worked again at the intensive care unit on an "as needed basis." While there is evidence of the amount of Mother's income in 1996 and 1997, there was no indication of her income while she worked part-time in St. Louis prior to her move. Nor was there any indication either that there was suitable employment for her in Maryland near her home or of the amount of any income she might receive from such a position. The record does not indicate Mother is unhealthy, although it does indicate she has had somewhat difficult pregnancies. There was evidence that the Maryland preschool program in which Mother enrolled Daughter cost $50.00 for the school year, but no evidence of any cost of childcare in Maryland beyond the hours of the Daughter's preschool or for Mother's second child. There was no evidence of the cost of transportation, clothing and other items that would be necessary if Mother was employed in Maryland. Mother testified she wants to be a "stay-at-home mom [and] never wanted to have a career and work." Additionally, the record reveals that Mother has adequate available resources if she remains at home.

We conclude the trial court did not abuse its discretion in imputing no income to Mother. Given the circumstances in this case, the trial court's findings regarding child support are not unreasonable. Father's third point is denied.

### MOTHER'S APPEAL

 In her sole point, Mother urges the trial court erred in limiting the period of time Mother is permitted to relocate to Maryland with Daughter because the trial court loses jurisdiction once Daughter has lived in Maryland for one hundred eighty days. Father counters that the trial court retains enforcement jurisdiction even when a child lives out of Missouri.

 We recognize that a Missouri court retains jurisdiction to enforce its custody orders even after a child leaves the state. *Levis v. Markee,* 771 S.W.2d 928, 931 (Mo.App. E.D.1989) (finding a Missouri court had jurisdiction to enter a civil contempt order for noncompliance with its prior custody order, even though the child had lived outside Missouri for more than six months). We conclude, however, that the nature of the issue resolved by the court determines whether the proceeding is a modification or an enforcement proceeding. *See Haydon v. Darrough,* 961 S.W.2d 940, 942 (Mo.App. E.D.1998) (concluding an order labeled "contempt" was actually a modification in that "the trial court changed the circumstances of the family"). When a court is confronted with and must make a determination regarding the best interest of a minor child, the court must have modification jurisdiction, rather than enforcement jurisdiction, over the proceeding. *See Levis,* 771 S.W.2d at 931 (noting "there was no requirement for modification jurisdiction" because "the court was not confronted with and made no determination as to what was in the best interest of" the minor child when addressing whether a parent was in civil contempt of the earlier decision). As we noted earlier, the paramount concern in resolving whether or not a minor child should be relocated is the child's best interests. *Puricelli,* 969 S.W.2d at 296. That is the issue that would arise in any proceeding addressing the challenged provision. Because the court would need to confront and determine the minor child's best interests in staying or leaving the then-state of residence, the court would need to have modification, rather than enforcement, jurisdiction over the proceeding.

 The Uniform Child Custody Jurisdiction Act (UCCJA) sets forth prerequisites to a Missouri court's exercise of jurisdiction over a child custody issue. Section 452.450 RSMo 1994. Jurisdiction under the UCCJA to hear custody matters is characterized as subject matter jurisdiction, which may not be waived, and may not be conferred by consent of the parties and must be based upon circumstances at the time the court's jurisdiction is invoked. *Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo. App. E.D.1992).

The Missouri Supreme Court has recognized that custody issues often require courts to make choices "knowing that circumstances will change, but without any assurance as to how changed circumstances will impact the best interests of the child[ ]." *Lacher v. Lacher,* 785 S.W.2d 78, 80 (Mo. banc 1990). In an effort to accommodate the uncertainty, "some courts have fashioned orders that attempt to take into account future contingencies" by, for instance, ordering a change of custody when a specified event occurs, or requiring the parties to reappear in court after the expiration of a specified time, or by leaving custody open pending the resolution of employment decisions by one or both parties. *Id.* While commending the "genuine concern for the children" that motivates "such creativity," the Missouri Supreme Court concluded such provisions improperly expand the trial court's jurisdiction. *Id.*

 The provision challenged by Mother here is just such a provision. It essentially leaves open the custody issue regarding the location of Daughter's home two years after the Judgment and requires the parties to reappear in court after the expiration of two years. "As a practical matter, the language purporting to allow the court to retain jurisdiction, was simply

**652**

excess language." *T.L.I. v. D.A.I.*, 810 S.W.2d 551, 554 (Mo.App. E.D.1991). "A judgment which goes beyond the trial court's jurisdiction may be valid if, by disregarding the surplusage, the remainder of the judgment may be separated and treated as dispositive of the controversy." *Id.* We may strike such surplus language and otherwise affirm the judgment "if the excess language is separable, does not affect the finality of the judgment and if the judgment is otherwise a proper subject for appellate disposition within the issue's frame." *Id.*

Because we cannot predict whether a Missouri court will have jurisdiction under the UCCJA to address where Daughter should live as of September 2000, the challenged provision improperly expands the trial court's jurisdiction and the principles of *T.L.I.* apply. Therefore, we will strike from the Judgment the two year limitation on Daughter's relocation to Maryland.

The phrases "for a period of two (2) years" and, "during the said period," are stricken from paragraph 2. at page 10. Accordingly that paragraph shall read in full:

> 2. Wife shall be, and hereby is, awarded primary physical custody of the minor child and, in connection therewith, effective September 6, 1998, shall be, and hereby is, permitted to remove the minor child from the State of Missouri and establish the residence of the minor child in the State of Maryland.

As so modified, Judgment is affirmed.

WILLIAM H. CRANDALL, Jr., P.J., concurs.

KENT E. KAROHL, J., dissents in separate opinion.

KENT E. KAROHL, Justice, dissenting.

I concur with Judge Hoff in the analysis and holding on the substantive issues of the appeal and the cross-appeal. However, the appropriate result would be a remand to permit the trial court to reconsider and redecide all the custody issues. It has

broad discretion in deciding these issues. We do not. In light of our decision rejecting the two-year limitation on the modification of these issues, it would be more appropriate for the trial court to reconsider all of the modification of custody issues. There would be no need for additional evidence, but that would be at the court's discretion.