Kara Leigh HOLIFIELD, Respondent,

v.

Brian Dewayne HOLIFIELD, Appellant,

Jeffrey Gibson and Teresa Gibson, Respondents.

No. WD 61881.

Missouri Court of Appeals,
Western District.

July 22, 2003.

Cynthia K. Wallace, Kansas City, MO, for appellant.

Robert E. Harris, Warrensburg, MO, for respondent Holifield.

Charles J. Dykhouse, Columbia, MO, for respondents Gibson.

Before JOSEPH M. ELLIS, Chief Judge, JAMES M. SMART, JR., Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Chief Judge.

Brian D. Holifield ("Father") appeals from a judgment entered in the Circuit Court of Johnson County dissolving his marriage to Kara Holifield (Mother) and awarding sole legal and physical custody of the couple's only child, Katie, to Respondents Jeffrey and Teresa Gibson, the child's maternal grandparents.

Father and Mother were married on October 4, 1997. On March 29, 1998, the couple's only child, Katie, was born of the marriage. Father and Mother separated on December 3, 2000. On December 7, 2000, Mother filed her Petition for Dissolution of Marriage.

On April 12, 2001, the trial court conducted a hearing on the issue of temporary custody of Katie. On May 18, 2001, the trial court entered its order granting Mother temporary custody.

On August 17, 2001, the trial court heard Mother's petition. Subsequently, on October 12, 2001, the trial court entered what it denominated as an "Interlocutory [sic] Judgment Entry" in which it dissolved the marriage, divided the property of the parties, denied maintenance to either party, and awarded the couple joint legal and physical custody of Katie. The court further decreed that Mother's address would be the primary address for mailing and educational purposes and that Father should pay child support of $520.00 per month. Under the parenting plan adopted by the Court, Mother was given physical custody from 6 p.m. Sunday until 6 p.m. Thursday, and Father was given custody from 6 p.m. Thursday through 6 p.m. Sunday. The parties were granted custody on alternating holidays, and Father was given custody of Katie for two months over the summer with Mother receiving custody on alternating weekends during that period. After making the foregoing decrees, the trial court's judgment provides:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Court further finds that it would be in the minor child's best interest for the parties to participate in counseling with Dr. Marilyn Hutchinson ... regarding the issues of the use of similar parenting skills by both parents and to work on alleviating communication problems. Upon the completion of the counseling with Dr. Marilyn Hutchinson ... to help with the parties [sic] parenting skills, communication skills and for a mental health evaluation and upon receipt of Dr. Hutchinson's report the Court will then review its order regarding parenting of the child and child support.

On February 11, 2002, Mother filed a "Motion to Modify Judgment of October 12, 2001," asking for sole legal and physical custody of Katie.

On February 14, 2002, Respondents filed a pleading denominated: "The Maternal Grandparents' Motion to Intervene to Seek Custody of Their Granddaughter." In that pleading, Respondents alleged that both Father and Mother were unfit and that the welfare and best interests of Katie mandated that custody be granted to a third party. On that basis, Respondents asked the court to allow them to intervene to pursue sole legal and physical custody of Katie. The trial court subsequently granted Respondent's motion to intervene, and Respondents filed a pleading seeking custody of Katie.

The trial court conducted a trial on the matter on July 11, 12, 23, and 24, 2002. On July 31, 2002, the trial court entered its "Amended Judgment of Custody, Visita-

tion, and Support." The trial court found that its orders entered on October 12, 2001, related to custody, visitation and support had been temporary in nature and that it had retained jurisdiction over those matters pending counseling to be received by Mother and Father. The trial court then applied the provisions of § 452.375 to determine who should be awarded custody of Katie. The trial court went on to find that Mother and Father were unfit and that the welfare of the child would be best served by placing her with a third party. The court found that it was in the best interests of Katie to be placed in the sole physical and legal custody of Respondents and so ordered. The court rejected the proffered parenting plans and set forth its own parenting plan outlining visitation for Mother and Father. The trial court also ordered Father and Mother to both pay child support to Respondents. Father brings four points on appeal challenging the trial court's award of custody to Respondents.

■ "Our review of a judgment modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Johnson v. Lewis*, 12 S.W.3d 379, 382 (Mo. App. W.D.2000). "We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Id.*

■ Before addressing Father's arguments on appeal, although the issue has not been raised by the parties, we must initially consider whether the trial court acted in excess of its jurisdiction when it entered its amended judgment. *Spicuzza v. Spicuzza*, 886 S.W.2d 660, 661 (Mo.App. E.D.1994).[1] In its "Interlocatory [sic]

Judgment," the trial court stated that, upon completion of Mother and Father's counseling with Dr. Hutchinson and the court's receipt of her report, the court would review its order regarding parenting of the child and child support. In its Amended Judgment, the trial court relied upon that language in finding that it had retained jurisdiction over custody, visitation and support issues.

"The Missouri Supreme Court has recognized that custody issues often require courts to make choices 'knowing that circumstances will change, but without any assurance as to how changed circumstances will impact the best interests of the child[ ].'" *Lavalle v. Lavalle*, 11 S.W.3d 640, 651 (Mo.App. E.D.1999) (quoting *Lacher v. Lacher*, 785 S.W.2d 78, 80 (Mo. banc 1990)). "In an effort to accommodate the uncertainty, 'some courts have fashioned orders that attempt to take into account future contingencies' by, for instance, ordering a change of custody when a specific event occurs, or requiring the parties to reappear in court after the expiration of a specified time, or by leaving custody open pending the resolution of employment decisions of one or both parties." *Id.* "While commending the 'genuine concern for the children' that motivates 'such creativity,' the Missouri Supreme Court concluded such provisions improperly expand the trial court's jurisdiction." *Id.*

In this case, the provisions of the trial court's "Interlocatory [sic] Judgment" purporting to retain jurisdiction over the issues of "parenting of the child" and child support are precisely the type of creative attempt to expand the trial court's jurisdiction that has previously been rejected by Missouri case law. *See Lacher*, 785

**1.** "We take up the issue of jurisdiction *sua sponte* as we always have the duty to inquire and determine whether jurisdiction is proper." *Spicuzza v. Spicuzza*, 886 S.W.2d 660, 661 (Mo.App. E.D.1994).

S.W.2d at 79 (holding invalid and of no effect provisions in a judgment "purport[ing] to retain jurisdiction in the trial court for six months 'over the issues of the amount of child support and maintenance ... for the reason the respondent [was] currently unemployed.' "); *Lavalle,* 11 S.W.3d at 651–52 (holding invalid a provision in judgment granting mother permission to move with child to Maryland that improperly restricted that grant to two years subject to further review of the trial court at that time); *See also Tetzner v. Tetzner,* 829 S.W.2d 670, 671 (Mo.App. W.D.1992); *T.L.I. v. D.A.I.,* 810 S.W.2d 551, 553–54 (Mo.App. E.D.1991).

Indeed, the facts of the case at bar are almost indistinguishable from those in *Tetzner v. Tetzner,* 829 S.W.2d 670 (Mo.App. W.D.1992). In *Tetzner,* the trial court entered an original decree of dissolution similar to the "Interlocutory [sic] Judgment" entered in this case. The trial court awarded custody to Mrs. Tetzner, granted Mr. Tetzner supervised visitation, divided all of the property of the marriage, and made a specific and enforceable award of child support. *Id.* at 670–71. The trial court's decree further "provided that the order for visitation would be a temporary order and directed the parties to return to court on September 5, 1990, for further consideration of visitation, at which time the supervising psychologist was to provide a written report to the court." *Id.* at 670–71. The trial court subsequently conducted another hearing on the issue of visitation and entered an amended decree of dissolution on June 24, 1991, wherein the court changed the visitation provisions and granted Mr. Tetzner unsupervised visitation. *Id.* at 671. On appeal, this court held:

The Missouri Supreme Court case of *Lacher v. Lacher,* 785 S.W.2d 78 (Mo. banc 1990), is controlling. In *Lacher,* the trial court had purported to retain jurisdiction over the issues of the amount of child support and maintenance for a period of six months because Mr. Lacher was unemployed at the time the original decree was entered. The Missouri Supreme Court found the original decree of dissolution entered April 28, 1988, to be final and appealable, such that the trial court lost its jurisdiction at the expiration of the thirty day period and the attempt to retain jurisdiction to be ineffective. *Id.* at 81. *See also, Snyder v. Snyder,* 788 S.W.2d 339 (Mo.App. 1990). The court noted further that "[t]he decree divides all the property of the marriage, awards custody of the children and establishes a visitation schedule, makes a specific and enforceable award of support and provides for a specific and enforceable maintenance payment, ..." *Id.* Where there is nothing left to adjudicate, that is, where "[t]he controversy is adjudicated to its conclusion and execution may issue in the event of the failure of either party to perform the obligation imposed by the decree," the judgment of the trial court is final and appealable.

Such is the case herein. The record reflects that the decree of June 26, 1990, is final in that it divides all property of the marriage, awards custody of the children and establishes a visitation schedule. It also makes a specific and enforceable award of child support. The trial court is left nothing to adjudicate. Thus, pursuant to the holding of *Lacher,* which this court is constrained to follow, the dissolution decree entered by the trial court on June 26, 1990, was a final and appealable judgment causing the trial court to lose jurisdiction at the expiration of thirty days past said date. There exists no lawful method which authorizes a trial court to 'hold in abeyance' a judgment which has become fi-

nal. *Id.* at 80 (citation omitted). The proper method for modifying the original decree is by way of a motion to modify . . .

*Tetzner*, 829 S.W.2d at 671.

■ As in *Tetzner*, the trial court's "Interlocutory [sic] Judgment" dissolves the marriage between Father and Mother, divides all property of the marriage, awards custody of the couple's only child, adopts a parenting plan, and makes a specific and enforceable award of child support. The trial court's judgment left nothing further to adjudicate [2] and, therefore, constituted a final and appealable judgment susceptible of enforcement. *See Tetzner*, 829 S.W.2d at 670–71.

■ The trial court's attempt to retain jurisdiction over issues related to Katie's custody and support until after Father and Mother had undergone counseling and a report had been provided to the court from Dr. Hutchinson was an improper attempt to extend the jurisdiction of the trial court beyond the period allowed by Rule 75.01. *See Tetzner*, 829 S.W.2d at 670–71. Where the trial court includes language in a judgment that attempts to improperly expand its jurisdiction, the language of the trial court purporting to allow the court to retain jurisdiction is "without effect" and, as a practical matter, is simply treated as excess language. *T.L.I.*, 810 S.W.2d at 554.

Thus, we are constrained to find that the trial court's "Interlocutory [sic] Judgment" was a final judgment with respect to all issues addressed and determined therein and that the trial court's language claiming to retain jurisdiction until after Father and Mother had completed therapy was of no effect. The trial court lacked jurisdiction to amend that final judgment after thirty days had past and erred as a matter of law in finding that it did. *Tetzner*, 829 S.W.2d at 670–71.

■ After the judgment became final, the trial court could not modify the custody provisions unless the requirements of § 452.410 were satisfied and could not modify the child support provisions unless the requirements of § 452.370.1 were met. Section 452.410.1 provides that "the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Similarly, Section 452.370.1 requires a finding by the trial court that a substantial and continuing change has occurred which renders the original award unreasonable. *Potter v. Potter*, 90 S.W.3d 517, 520 (Mo.App. S.D. 2002); *Baker v. Baker*, 60 S.W.3d 19, 22 (Mo.App. E.D.2001).

■ Mother did file a motion to modify custody, but it is apparent from the trial court's Amended Judgment that the court was entering an initial award of custody and that it was not acting under the au-

---

2. Section 452.305.1(3) requires the trial court, to the extent it has jurisdiction, to consider and make provisions for child custody, the support of each child, the maintenance of either spouse, and the disposition of property in entering its decree of dissolution of marriage. The trial court is also required to find that at least one of the parties has been a resident of this state for at least ninety days prior to the commencement of the proceeding, that thirty days have elapsed since the filing of the petition, and that "there remains no reasonable likelihood that the marriage can be preserved and that therefore the marriage is irretrievably broken." *§ 452.350.1(1) & (2)*. The trial court's judgment in the case at bar addresses all of these issues.

thority of § 452.410 to modify the prior award.[3] On remand, the trial court will be afforded the opportunity to consider whether Mother's motion to modify should be granted in accordance with the provisions of § 452.410. Furthermore, because "orders concerning custody or visitation should not be made based on stale evidence from long-concluded hearings," on remand, the trial court should afford the parties an opportunity to present additional evidence related to present circumstances of the child and her custodial parents. *Searcy v. Searcy,* 38 S.W.3d 462, 471 (Mo.App. W.D.2001).

For the foregoing reasons, the trial court's judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this judgment.

All concur.

3. While ordinarily a trial court's failure to expressly find "that a change has occurred in the circumstances of the child or [her] custodian and that the modification is necessary to serve the best interests of the child" will not necessitate reversal of the trial court's modification of custody if the record sufficiently supports such a finding, *see In re Marriage of Bertz,* 856 S.W.2d 932, 935 (Mo.App. S.D. 1993), the reasons for inferring such a finding on the part of the trial court are not applicable where, as here, the trial court's judgment does not reflect that it is acting under § 452.410 to modify a prior decree.