148 S.W.3d 315 (2004)
In re the MARRIAGE OF Brian K. LOFTIS and Jennifer Lynn Loftis.
Brian K. Loftis, Petitioner-Appellant,
v.
Jennifer Lynn (Loftis) Sheppard, Respondent-Respondent.
No. 25898.
Missouri Court of Appeals, Southern District, Division Two.
November 10, 2004.
*316 Michael B. Curtis, Roy E. Williams, Jr., West Plains, for appellant.
Dennis Owens, James McManus, Ian Losasso, Kansas City, for respondent.
*317 JEFFREY W. BATES, Chief Judge.
Brian Loftis ("Father") appeals from a judgment modifying the custody provisions of an earlier judgment dissolving his marriage to Jennifer (Loftis) Sheppard ("Mother"). Father's appeal presents two points for decision. First, he contends the trial court erred in finding that Mother's relocation to Granite City, Illinois, with their daughter, Andee Loftis ("Andee") was made in good faith. Second, he contends the trial court's decision to award "primary physical custody" of Andee to Mother is against the weight of the evidence. We affirm.

I. Facts and Procedural Background
Father and Mother were married on April 27, 1996 and resided in Gainesville Missouri. Andee was born on February 8, 1998. All of Andee's paternal relatives live in the Gainesville area. The parties separated in March 2000, and Father filed for divorce.
A judgment and decree of dissolution was entered on August 9, 2000. At that time, Mother resided in the family home in Gainesville, Missouri; however, she was intending to move approximately 200 miles away to Granite City, Illinois, to live with her boyfriend, Brian Sheppard ("Sheppard"). Mother worked for a newspaper in Gainesville and had found a better-paying job with more opportunity for advancement in Granite City. The trial court awarded Father and Mother joint legal and joint physical custody of Andee. The parenting plan essentially provided for alternating two-week periods of parenting time. The plan stated that "[t]his alternating schedule shall last as long as practical or until the child reaches school age. At such time, the parties stipulate that a revised parenting plan shall be drafted that reflects the child's best interest and addresses the significant change in circumstances that will be created by the child's enrollment in school." Because of Mother's impending move, the parenting plan required that Andee's custody exchanges take place in Rolla, Missouri.
After the decree was entered, Mother moved to Granite City as planned with Father's consent. After Mother moved, she and Father continued to follow the alternating parenting time schedule in the parenting plan. Mother married Sheppard on February 1, 2002.
On February 21, 2002, Father filed a motion to modify custody. He sought sole legal and physical custody of Andee, and his proposed parenting plan restricted Mother's visitation to certain holidays and six weeks during the summer. On July 29, 2002, Mother filed a counter-motion to modify. Her motion requested that the parties continue joint legal custody, but that she be granted "primary physical custody" of Andee. Mother's suggested parenting plan proposed that Father be granted visitation on specified holidays, every other weekend and six weeks during the summer. The competing motions to modify were tried on October 3, 2002, when Andee was approximately four years and eight months old.
A modified judgment was entered on September 15, 2003. In the judgment, the trial court noted that both Mother and Father agreed the original parenting plan had to be modified to allow Andee to start school. The trial court made the following factual finding:
It would be in the best interest of the child, especially considering her age, that she have frequent contact with each parent. The child's best interest is to be in the primary physical custody of her mother, but to live close enough to Gainesville so as to preserve her relationship with her father and have frequent contact with her father's family in *318 Gainesville. These relationships can be maintained if the child remains within 75 miles from Gainesville.
Therefore, the trial court denied Mother's request to relocate Andee's principal residence to Granite City, Illinois, even though the court determined Mother's request to relocate was made in good faith within the meaning of § 452.377.[1] The modified judgment left the parties' joint legal custody unchanged, but Mother was awarded "primary physical custody" as set out in a modified parenting plan attached to the judgment. The modified parenting plan provided for Father to have parenting time on specified holidays, three weekends each month, spring break, and all of Andee's summer vacation from school except for two weeks reserved to Mother. This modification of the parenting plan resulted in Father having about 144 days of parenting time, compared with 182 days of parenting time under the original plan.
Mother initially filed a notice of appeal from the modified judgment on October 14, 2004. Father filed a timely cross-appeal a week later. In May 2004, Mother voluntarily dismissed her appeal and moved to Hollister, Missouri, to comply with the geographic limitation imposed by the trial court in its modified judgment.[2] Therefore, we are required to address only those contentions advanced by Father in his appeal.

II. Standard of Review
We believe the following quotation succinctly summarizes the applicable standard of review:
We will affirm a judgment in a custody modification case if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. When there is conflicting evidence, it is in the trial court's discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears. In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's judgment. Greater deference is given to a trial court's determination in matters involving child custody than in any other type of case. We exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong.
In re D.M.S., 96 S.W.3d 167, 171 (Mo.App.2003) (citations omitted).

III. Discussion and Decision
In the original decree, Mother and Father were awarded joint physical custody of Andee. Therefore, the standard found in § 452.410.1 is applicable. See A.B.C. v. C.L.C., 968 S.W.2d 214, 219 (Mo.App.1998). Section 452.410.1 authorizes the modification of a prior custody decree upon a finding by the trial court that "a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." That standard is met here. Mother and Father stipulated in the original parenting plan that the plan would have to be modified when Andee started school, and they each had filed motions to modify alleging that a substantial change of circumstance had occurred. The trial court subsequently found modification of the parenting plan was necessary since Andee would be starting school in *319 the fall of 2003, and it was in her best interest to discontinue the two-week periods of alternating custody when her parents lived 200 miles apart. Father's two points on appeal challenge the modified judgment as being against the weight of the evidence.
In Father's first point, he contends the trial court's finding that Mother acted in good faith by relocating Andee to Granite City, Illinois, was against the weight of the evidence. Section 452.377.9 required Mother to prove the proposed relocation was made in good faith and was in Andee's best interest. Although Mother carried her burden as to the element of good faith, the trial court found relocation was not in Andee's best interest. Therefore, the trial court ultimately denied Mother's request to relocate. We are precluded by court rule and statute from reversing a judgment unless we find that error was committed by the trial court "against the appellant" which materially affected the merits of the action. Rule 84.13(b); § 512.160.2.[3] Neither occurred here because the trial court ruled in Father's favor on the relocation issue. Therefore, Father suffered no prejudice as the result of any error by the trial court in determining whether the proposed relocation was made in good faith. See Taylor v. Taylor, 908 S.W.2d 361, 363 (Mo.App.1995). Point I is denied.
In Father's second point, he contends the trial court's award of "primary physical custody" to Mother was against the weight of the evidence because: (1) the trial court improperly focused on a single episode of lack of cooperation by Father concerning unscheduled visitation by Mother; (2) Father and Andee were close; (3) Andee's extended family lived in the area of Father's residence; (4) there was no deprivation of educational or cultural activities for Andee; (5) Father was involved in Andee's daily activities; and (6) Mother refused to consult with Father regarding major educational decisions for Andee. Father argues that he would have been given custody of Andee if the trial court had given appropriate consideration to these matters.
Preliminarily, we note that the phrase "primary physical custody" is not among the types of custody dispositions recognized by § 452.375.5, which are: (1) joint physical custody; (2) sole physical custody; (3) third-party custody; and (4) visitation. A trial court's failure to use proper nomenclature in describing the type of custody being awarded to a parent is confusing to litigants and can impede proper appellate review. In this instance, Father was granted joint physical custody by the original decree, and the parenting plan allocated him approximately 182 days of parenting time. Section 452.375.1(3), in relevant part, defines "joint physical custody" as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which the child resides with or is under the care and supervision of each of the parents." Since Father was allocated approximately 144 days of parenting time in the modified parenting plan, he was actually awarded joint physical custody of Andee by the modified judgment. See In re Marriage of Parmenter, 81 S.W.3d 234, 238 (Mo.App.2002); Nix v. Nix, 862 S.W.2d 948, 950 (Mo.App.1993); Francka v. Francka, 951 S.W.2d 685, 689 (Mo.App.1997). Therefore, we will consider Father's second point as contending that the trial court's allocation of parenting time in the modified parenting plan was contrary to Andee's best interest. See Tracy v. Tracy, 961 *320 S.W.2d 855, 859 (Mo.App.1998); Francka, 951 S.W.2d at 689.
The evidence presented at trial demonstrated that Mother and Father were good parents who loved their daughter and provided her with a suitable home environment. Each parent took steps to give Andee educational, recreational and daycare opportunities of appropriate quality. Each parent conceded that transferring custody of Andee every two weeks was no longer workable. Both parents wanted as much parenting time with Andee as they could get, consistent with what was in her best interest. When Father was asked what he thought would be best for Andee, he testified that he would have Mother move back to Gainesville and split parenting time 50/50 so Mother and Father could both see their daughter.
The trial court's disposition of the case did not vary far from Father's request. In the trial court's modified judgment, it required Mother to move within 75 miles of Gainesville. After the modified judgment was entered, Mother dismissed her appeal and moved to Hollister, Missouri, in compliance with the trial court's decision. As a result, Andee now lives about 65 miles from Father and members of his extended family. Moreover, the modified parenting plan allocated 60% of the parenting time to Mother and 40% of the parenting time to Father. Under the modified parenting plan, Andee spends more time with Mother during the school year and more time with Father during the summer months. Although we sympathize with Father's desire to be allocated the same amount of parenting time as Mother, we do not believe the trial court's failure to do so disregarded Andee's best interest:
[W]hile a trial court may desire to split time equally between the parents under a joint physical custody plan, it many times is not in a child's best interests to do so because the child is of school age and the parents live at some distance, which would require the child to shuffle back and forth between school districts. In these instances, trial courts, desiring to award both parents the maximum time possible for having physical custody, while still observing the child's best interest, are prone to designate one parent the primary physical custodian during the school year and the other the primary physical custodian during the summer vacation, as was done here.
Love v. Love, 75 S.W.3d 747, 765 (Mo.App.2002).
The arguments advanced by Father to demonstrate that the trial court's modified parenting plan was not in Andee's best interest are unpersuasive. We do not agree that the trial court placed undue emphasis on the one instance in which Father failed to cooperate with Mother concerning unscheduled visitation.[4] The Father admitted the incident occurred and acknowledged that he did not handle the situation properly. The trial court simply referred to the incident as one example of when the parties had encountered difficulties with visitation. The fact that Father was close to Andee is counterbalanced by Mother's equal closeness to the child and by the trial court's allocation of 40% of *321 the available parenting time to Father. The trial court accommodated Father's concern about Andee's close relationship with Father's extended family by requiring Mother to move back to a location within 75 miles of Gainesville. The fact that the trial court required this move amply demonstrates the educational and cultural opportunities in the areas surrounding Hollister and Gainesville are not deficient. Father's involvement in Andee's daily activities can be maintained through utilization of the substantial parenting time allocated to him. Finally, the trial court apparently did not believe Father's assertion that Mother failed to consult with Father concerning major educational decisions for Andee. We defer to the trial court's assessment of the witnesses' credibility and accept the trial court's resolution of conflicting evidence. Melton v. Collins, 134 S.W.3d 749, 752 (Mo.App.2004).
After a careful review of the transcript, we are not left with the firm belief that the trial court's allocation of parenting time between Mother and Father was wrong. Accordingly, we decline to set aside the judgment on the ground that it is against the weight of the evidence. See In re Marriage of Eikermann, 48 S.W.3d 605, 608 (Mo.App.2001). Point II is denied.
We conclude that the trial court's modified judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Therefore, the judgment is affirmed.
PARRISH, P.J., and SHRUM, J., concur.
NOTES
[1] All references to statutes are to RSMo (2000).
[2] Hollister is approximately 65 miles from Gainesville.
[3] All references to rules are to the Missouri Rules of Civil Procedure (2004).
[4] Mother called Father the night before traveling to Gainesville and asked to see Andee while Mother was in the area so they could eat lunch together. Father instructed Mother to call him back and tell him where they were going to eat lunch before he would agree to the unscheduled visitation. Mother called the next morning when she arrived in town at 11:00 a.m. and asked to take Andee to lunch. Father replied that, "You didn't call when you were supposed to, so you don't get to see her." He refused to allow Andee to eat lunch with Mother.