Robin D. (Walters) CARLTON, Petitioner/Movant/Respondent/Respondent,

v.

John E. WALTERS, Jr., Respondent/Respondent/Movant/Appellant.

No. SD 28879.

Missouri Court of Appeals, Southern District, Division Two.

June 3, 2009.

Motion for Rehearing and Transfer Denied June 24, 2009.

Application for Transfer Denied July 31, 2009.

---

Christena Silvey Coleman, Garrett & Silvey, West Plains, MO, for Appellant.

David G. Neal, Neal Law Firm, Eminence, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

John Walters, Jr. ("Father") appeals a judgment of the Circuit Court of Oregon County entered on September 12, 2007, claiming that the trial court erred in allow-

ing Robin (Walters) Carlton ("Mother") to relocate and in entering a parenting plan annually rotating parenting time between Mother and Father who reside in different states, causing their daughter, Danielle, to change schools on an annual basis. Father argues that the relocation and the parenting plan entered by the trial court are not in Danielle's best interest. Finding that the relocation issue had previously been decided in Mother's favor by a final judgment entered on January 17, 2007, which was not timely appealed, this Court determines that this issue is not reviewable on this appeal of the September 12, 2007 judgment. As to the parenting plan, this Court finds that the record does not contain substantial evidence to support a finding that the annual rotation plan is in the best interest of this school-aged child; therefore, we reverse and remand to the trial court to take additional evidence, if deemed appropriate, and to enter a judgment that is supported by the record.

### Factual and Procedural Background

On August 15, 2005, the marriage of Mother and Father was dissolved. The dissolution judgment also provided for the custody of the parties' minor child, Danielle Nicole Walters (hereinafter "Danielle"), who was born on October 10, 2001. Mother and Father were awarded joint legal and joint physical custody with Mother and Father following an alternating weekly schedule that divided the holidays into half-day increments. Neither party was ordered to pay child support. This plan was achieved by an agreement of the parties. Both parties testified that the plan was in the best interest of the child and requested that the trial court approve the agreement. At the time the dissolution judgment was entered, Danielle was four years old.

In October of 2005, approximately two months after the entry of the dissolution judgment, Mother sent Father a notice of relocation indicating that Mother intended to relocate to Prim, Arkansas. In response, Father filed a motion to modify, motion to prevent relocation, and an affidavit in objection to relocation on November 1, 2005. Mother filed a response to the motion to modify and also filed a motion to relocate on November 28, 2005. Despite the fact that the case was put on the trial docket for April of 2006, the case fell dormant. For reasons unexplained in the record, the trial date was cancelled, and the case was not heard until January of 2007.

On January 17, 2007, a judgment ("January Judgment") entitled "Interlocutory Judgment" was issued by the Circuit Court of Oregon County finding that "[s]ince the child is not enrolled in school, the Court will allow the relocation of the minor child." Although the exchange location was changed to accommodate Mother's relocation, the weekly rotation schedule remained intact. The Judgment further stated that "[a]ll other motions are hereby overruled."

On March 13, 2007, Mother filed a motion to modify. The trial court assigned this motion a new case number and began a new docket sheet in the trial court's records. Father filed his answer on April 6, 2007, and a counter-motion to modify on August 23, 2007. Mother's proposed parenting plan requested that she have custody of Danielle during the school year, with Father to receive visitation on certain weekends, and the parties to share custody on alternating weeks during the summer months. Father's proposed parenting plan proposed that he receive custody of Danielle during the school year, with Mother granted visitation on certain weekends, and the parties to share custody on alternating weeks during the summer months.

Both parties asserted a joint legal and joint physical arrangement to be in the best interests of the child in their respective parenting plans.

On September 12, 2007, following trial, the trial court entered a judgment ("September Judgment") on the cross-motions to modify and purportedly on the motion to relocate and motion to prevent relocation, both of which had been ruled in the January Judgment. The trial court rejected both parties' parenting plans, finding that the best interest of the child would be served by rotating physical custody annually between the parties. This arrangement causes Danielle to change school districts every year. At the time the September Judgment was entered, Danielle was attending kindergarten in Alton, Missouri, where Father resided. The trial court's parenting plan provided that Danielle would change schools and attend first grade in Mother's respective Arkansas school district for the next academic year. The September Judgment further stated that Mother's motion to relocate was sustained, Father's motion to prevent relocation was overruled, and each party's motion to modify was denied.

On October 12, 2007, Father filed a motion for new trial and a motion for reconsideration, both of which the trial court subsequently denied. This appeal followed. Additional facts will be supplied hereafter as necessary to address each of Father's points.

### Standard of Review

In custody cases, "the decision of the trial court will be affirmed unless it is unsupported by substantial evidence, unless it is against the weight of the evidence[,] or unless it erroneously declares or applies the law." *Koenig v. Koenig,* 782 S.W.2d 86, 88 (Mo.App.1989) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.

banc 1976)). Substantial evidence is " 'competent evidence which, if believed, would have probative force on the issues.' " *Midstate Oil Co. v. Mo. Comm'n on Human Rights,* 679 S.W.2d 842, 846 (Mo. banc 1984) (quoting *Barnes Hosp. v. Mo. Comm'n on Human Rights,* 661 S.W.2d 534, 537 (Mo. banc 1983)). We consider all evidence and reasonable inferences therefrom in the light most favorable to the judgment, disregarding contradictory evidence. *Murphy,* 536 S.W.2d at 32.

### Discussion

Father presents three points of alleged trial court error. They are addressed in the order presented.

### Motion to Relocate

Father's first point on appeal challenges the trial court's approval of Mother's motion to relocate, claiming it was not in the best interest of the child; however, this Court finds that Mother's motion to relocate was fully adjudicated in the January Judgment, which was not timely appealed, and, thus, cannot be considered in this appeal of the September Judgment.

The January Judgment explicitly stated that it was being entered to resolve the following motions: Father's motion to modify child custody and visitation; Mother's motion to relocate; Mother's motion for contempt; and Mother's response to Father's motion to modify. Father's motion to prevent relocation, although not explicitly mentioned in the January Judgment, was pending before the trial court at the time the January Judgment was entered. The January Judgment retained all custody provisions of the original dissolution judgment but, finding that Mother had made her application to relocate in good faith, granted her request to relocate to Prim, Arkansas and modified the dissolution judgment only slightly by designat-

ing Hardy, Arkansas as the new location for custody exchanges. The January Judgment further explicitly stated that all other motions pending were overruled at that time.

In this appeal, Father argues that the "Interlocutory Judgment" was entered as a temporary judgment with the intent of keeping the case open and making further determinations regarding the relocation until Danielle was of school age and the alternating weekly schedule would no longer work. The trial court, however, does not have the authority to extend its own jurisdiction in that manner. *See Holifield v. Holifield,* 109 S.W.3d 711, 715 (Mo.App. 2003) (where a judgment entitled "interlocutory" divides all property of the marriage, awards custody of the children, establishes a visitation schedule, and makes a specific and enforceable award of child support, the trial court is left nothing to adjudicate, thus the judgment is a final and appealable judgment and causes the trial court to lose jurisdiction at the expiration of thirty days after the date of entry). As was the case in *Holifield,* the "Interlocutory Judgment" in this case disposed of all of the issues then pending before the trial court and left nothing for further adjudication. This Court recognizes that this case is somewhat factually distinguishable from *Holifield,* in that the trial court here did not specifically purport to retain jurisdiction for a given amount of time as was done in *Holifield.* It is, however, clear that the same analysis as employed in *Holifield* applies to the January Judgment herein.

"The Missouri Supreme Court has recognized that custody issues often require courts to make choices 'knowing that circumstances will change, but without any assurance as to how changed circumstances will impact the best interests of the child[ ].'" *Lavalle v. Lavalle,* 11 S.W.3d 640, 651 (Mo.App. E.D.1999)

(quoting *Lacher v. Lacher,* 785 S.W.2d 78, 80 (Mo. banc 1990)). "In an effort to accommodate the uncertainty, 'some courts have fashioned orders that attempt to take into account future contingencies' by, for instance, ordering a change of custody when a specific event occurs, or requiring the parties to reappear in court after the expiration of a specified time, or by leaving custody open pending the resolution of employment decisions of one or both parties." *Id.* "While commending the 'genuine concern for the children' that motivates 'such creativity,' the Missouri Supreme Court concluded such provisions improperly expand the trial court's jurisdiction." *Id.*

*Holifield,* 109 S.W.3d at 714.

In this case, the January Judgment does not specifically state that the trial court purports to retain jurisdiction until some future event, however, the judgment does reference that it is entered "interlocutory," "[s]ince the child is not enrolled in school." While this Court can understand the allure of creating a temporary judgment to exist in the interim, a judgment is, nevertheless, final where it fully disposes of all of the issues presented. Where there is nothing left to adjudicate, that is, where "[t]he controversy is adjudicated to its conclusion and execution may issue in the event of the failure of either party to perform the obligation imposed by the decree," the judgment of the trial court is final and appealable. *Id.* at 715.

Mother's motion to relocate was decided and ruled upon by the trial court in the January Judgment, therefore it was not before the court for adjudication in August of 2007, when this case came to trial on the subsequently filed cross-motions to modify which the parties filed in 2007. The January Judgment became final on February

16, 2007, pursuant to Rule 85.01(a)(1),[1] and the last day for filing a notice of appeal was February 26, 2007, pursuant to Rule 81.04. Because Father did not timely appeal from the January Judgment, he cannot now challenge the trial court's grant of Mother's motion to relocate.[2] Point one is denied.

### Annual Alternation of Child's Residence

■ Father's second point on appeal contends that the trial court erred in entering a parenting plan whereby the child alternates schools on an annual basis, because there is no substantial evidence in the record supporting that such a custody plan is in the best interest of the child.

■ The trial court has broad discretion in awarding child custody, and such determinations are given deference unless the welfare of the child dictates a different disposition. *Simon–Harris v. Harris*, 138 S.W.3d 170, 176 (Mo.App.2004). However, the trial court's judgment in custody modification and relocation cases must be supported by substantial evidence, it may not be against the weight of the evidence, and it may not erroneously declare or apply the law. *In Re Marriage of Loftis*, 148 S.W.3d 315, 318 (Mo.App.2004). Substantial evidence is " 'competent evidence which, if believed, would have probative force on the issues.' " *Midstate Oil Co.*, 679 S.W.2d 842 at 846 (quoting *Barnes Hosp.*, 661 S.W.2d at 537).

In this case, each parent proposed a parenting plan to the trial court. Mother's parenting plan suggested that Danielle should live with her during the school year and attend school in Arkansas, while Father's parenting plan proposed that Danielle should live with him while attending school in Missouri. At trial, there was a great deal of evidence from the parents, a school counselor, and a school superintendent that the current custody schedule, which would have Danielle attending a different school each week, was not feasible and would not be in the best interest of the child. Conversely, there was substantial evidence presented by the parties that both Mother's and Father's proposed parenting plans were in Danielle's best interest. The only evidence in the record directed toward an annually alternating residence arrangement came during the testimony of Sheila Wheeler, Superintendent of the Alton School District. Father, on redirect examination, asked:

Q. If you received a judgment that has a parenting plan and it designates father's residence as the residential placement of that child—an address in let's say odd numbered years and mother's residence in even numbered years, does that impact your determination of whether she's within the district?

A. (by Superintendent Wheeler) I believe it would.

Near the end of Superintendent Wheeler's testimony, the following colloquy occurred:

THE COURT: Suppose there were a court order that provided that in alternate years the child would be residing within your district and would attend for a continuous academic year. The following year they would reside elsewhere—presumably attend elsewhere.

[Superintendent Wheeler]: Uh-huh.

---

1. References to rules are to Missouri Court Rules 2007.

2. At trial in August 2007, Father motioned to consolidate the case that lead to the January Judgment and the present case. The motion was granted; however, this was of no affect as there were no issues left for determination in the preceding case.

THE COURT: Would there be any difficulty under your policies of your district to accommodate that?

THE WITNESS: No. I don't see any difficulty with that.

After hearing the evidence, the trial court took the case under advisement and later rejected each of the parties' parenting plans and entered its own parenting plan. The court's parenting plan stated that Danielle's residence would alternate on an annual basis between her parents and she would attend school in the school district where the custodial parent resided in that year.

The parties contend, and this Court agrees, that no court in this state has been previously called upon to consider whether an annually rotating parenting plan which also requires the child to annually change school districts located in different states is in the child's best interest. As such, this is a case of first impression. While this plan may be unique and unfamiliar, this Court nevertheless reviews it in the exact same manner a more traditional parenting arrangement would be reviewed. Our standard of review, noted *supra*, requires that *this* plan must be supported by substantial evidence presented at *this* trial, just as would be required of any other parenting plan. Under our standard of review, a judgment will not be reversed simply because it is unique, unfamiliar, or has not been previously considered; it will be reversed, however, when it is not supported by substantial evidence in the record. The latter is the circumstance here.

At trial, each of the parents presented evidence to support their respective plans. Father focused on the fact that all of Danielle's family lived in Alton Missouri and that he had a flexible work schedule so he could spend a lot of time with her. Mother's evidence focused on her new circumstances living in Arkansas in a new home, where she could be a stay-at-home mom and Danielle could be close to her half-sister. Mother presented some evidence about the school that Danielle would attend in Arkansas through photographs of the classroom. Father did not present any specific evidence regarding the school district that Danielle would attend in Missouri. A school counselor and a school superintendent were called to testify, however, the crux of their testimony was simply that the current parenting plan would not be feasible because Danielle could not switch schools week to week. At no time did either attorney question the counselor or the superintendent about the effects, if any, of an annual rotation schedule upon Danielle. No other experts testified at trial.

■ Other than the two inquiries mentioned previously concerning the difficulties such an arrangement might or might not cause a school district, there was no mention during the trial of the possibility of an annual rotation schedule and, consequently, no evidence as to the possible effects such a plan might or might not have upon Danielle. Likewise, neither party proposed or requested such an arrangement. Neither Father nor Mother produced any evidence that an annually rotating schedule would be in Danielle's best interest. No expert testimony was adduced concerning the compatibility of the two school systems or the ability of Danielle to navigate two different academic curricula. While "[t]he determination of what is in a child's best interests is a subjective assessment based on the totality of the circumstances[,]" to affirm, this Court must find that the judgment is supported by substantial evidence. *In the Interest of A.A.T.N.*, 181 S.W.3d 161, 167 (Mo.App.2005). Here, there was no evidence presented at trial to support a finding that a parenting plan requiring the

child to change schools located in different states on an annual basis is in her best interest; therefore, it can not be said that the result reached was supported by substantial evidence. Father's second point is granted.[3]

### Decision

The trial court's judgment is reversed, and the case is remanded for the trial court to take further evidence as to the child's best interest, if deemed appropriate, and to enter a judgment not inconsistent with this opinion.

PARRISH, J., and RAHMEYER, J., concur.

See also, 294 S.W.3d 526, 2009 WL 2997927.

---

**3.** Father's third point argues that the trial court improperly relied on certain cases in its judgment. Due to the result reached in Appellant's point two, point three is rendered moot and will not be addressed.