Thomas N. Chapman, Judge
Andrea Trueblood (Mother) appeals the judgment of the Circuit Court of Johnson County, Missouri, modifying the schedule of physical custody and rotating annually the residential designation of the children for educational and mailing purposes. Mother contends that the trial court erred *174 in modifying the parenting time schedule and residence designation, arguing that there was no substantial evidence to support the judgment, and that the judgment was against the weight of the evidence. Finding no error, we affirm.
Facts and Procedure
Andrea Trueblood and Michael Mulvihill (Father) have two children together: B.M. (born July 8, 2011), and A.M. (born December 8, 2009). On February 23, 2012, a Judgment of Dissolution of Marriage was entered which awarded the parties joint legal custody of their two children, awarded Mother sole physical custody, and awarded Father a schedule of visitation. At the time of the dissolution, both Mother and Father were stationed at Whiteman Air Force Base in Johnson County, Missouri. Father was and continues to be a member of the United States Air Force. Mother was an Air Force member at the time of the dissolution, but is now enlisted in the National Guard.
On December 12, 2013, a stipulated Judgment was entered, which modified physical custody by awarding the parties joint physical custody, dividing parenting time between the parties equally on a weekly basis, and designating Mother's home as the residence of the children for educational and mailing purposes. At the time of the 2013 modification, Father and Mother were both on active duty in the United States Air Force. Mother resided at Whiteman Air Force Base near Knob Noster, Missouri, and Father resided in Warrensburg, Missouri.
On November 30, 2016, Father was notified that he was being reassigned to Anderson Air Force Base located in Guam, with arrival required between May 1 and May 10, 2017. On December 9, 2016, Father filed his Motion to Modify (which included his Notice of Relocation and Parenting Plan), proposing that the parties continue to have joint legal custody and joint physical custody of the children and that that the parties alternate years of physical custody (parenting time). More specifically, Father proposed that the children would continue to reside with Mother during the summer of 2017; then would move in with Father immediately prior to the beginning of the 2017/2018 school year; then back with Mother immediately prior to the beginning of the 2018/2019 school year; then back with father for the 2019/2020 school year.
In February of 2017, Father was given notice that the Air Force instead intended to reassign him to Eielson Air Force Base, North Pole, Alaska, with the same reporting dates (May 1 to May 10, 2017). On February 16, 2017, Father sent another Notice of Relocation to Mother, notifying her of the change in assignment (to Alaska) and again proposing an annually alternating custody schedule and designation of residence. On February 23, 2017, Father was granted leave to amend (by interlineation) his Motion to Modify to reflect his reassignment to Alaska.
The trial of this matter was held on January 9, 2018. Testimony was provided by Father, Mother, and Father's current wife (Stepmother). At trial Mother testified that Father's parenting plan would place undue stress on the children since it would necessitate annual relocation. Mother submitted her Second Amended Parenting Plan, which proposed that the parties continue to share joint legal and physical custody, that the children reside primarily with mother during the school year, and that the children spend the majority of the summer with Father.
Father proposed during his testimony that the children attend school in Alaska during his years of custody. Father and Stepmother testified that the stepchildren *175 Father has with Stepmother are very close to A.M. and B.M., that B.M. has special needs, and that the school district in Alaska has demonstrated an ability to accommodate a child with special needs as it has done so for Father's stepson with autism. Mother testified that she knew, dating back to the time of their divorce, that Father intended to make the Air Force his career and that she understood that relocation from Whiteman Airforce base was required as part of Father's military service. Father also testified concerning the significant benefits that his children derive from his employment in the Air Force. Father testified that he has consistently shown a more thorough commitment to facilitating communication between Mother and the children when they are in his custody than she has done when they are in hers. Father proposed that the parties annually alternate physical custody of the children or, alternatively, that the children reside with him through the school year and primarily with Mother in the summer. Father testified that an annually rotating custody schedule would be in the best interests of the children.
Father testified that he has consistently advanced in military rank ahead of schedule, that he was on track to complete a twenty-year career in the Air Force, and that accepting the reassignment to North Pole, Alaska, was not optional and was necessary to continue his active duty military career.
After reviewing the relevant best interest factors and finding that there had been a change in circumstances, the trial court entered its own parenting plan, which adopted Father's proposed alternating year schedule, but advanced it a year as the children had remained with Mother during the 2017/2018 school year, as follows:
"A. Custody
Mother and Father shall continue to have joint legal and joint physical custody of the minor children. The residence of the children for mailing and educational purposes shall rotate annually pursuant to the terms of this Parenting Plan.
(a) School Year Custody
The children will remain in Mother's custody and attend school in the school district where mother resides for the remainder of the 2017/2018 school year.
Father shall be entitled to custody of the children commencing on August 1, 2018. The children will remain in Father's custody and attend school in the school district where Father resides for the 2018/2019 school year.
The children shall return to Mother's custody on August 1, 2019, and the year rotation of custody shall continue hereafter so long as the parties do not reside within the same school district."
Mother appeals from this ruling, arguing that it is not supported by substantial evidence and that it is, in fact, contrary to the weight of the evidence. For the reasons set forth below, we affirm.
Standard of Review and Applicable Law
We will affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." Guier v. Guier , 918 S.W.2d 940, 946 (Mo. App. W.D. 1996). Missouri appellate courts have recognized that "[t]he trial court has broad discretion in child custody matters, and we will affirm its decision unless we are firmly convinced that the welfare and best interests of the children requires otherwise."
*176 Edmison ex rel. Edmison v. Clarke , 988 S.W.2d 604, 608 (Mo. App. W.D. 1999) (quoting Flathers v. Flathers, 948 S.W.2d 463, 465 (Mo. App. W.D. 1997) ).
"We view the evidence in the light most favorable to the decree and disregard all contrary inferences and evidence." Clayton v. Sarratt , 387 S.W.3d 439, 445 (Mo. App. W.D. 2013) (quoting Jones v. Jones, 277 S.W.3d 330, 334 (Mo. App. W.D. 2009) ). A change to the residential designation for educational and mailing purposes and a change in the parenting time schedule are changes in the terms related to joint physical custody, are sub-issues of custody, and are not changes in the custodial arrangement. Id. at 445-46. The standard for modification found in Section 452.410.1[1] applies when a party seeks to modify the custodial arrangement, and also when a party seeks a change related to the terms of joint physical custody. Id. at 446. A modification to the terms of a joint physical custody arrangement will be granted if the court finds, "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interests of the child." § 452.410.1.
Under Missouri law, "when the parties have not agreed to a custodial arrangement, the court is required to include in its judgment a written finding based on the public policy in § 452.375.4 and the factors listed in § 452.375.2(1) to (8), detailing the specific relevant factors that made the chosen arrangement in the best interest of the child." Brandow v. Brandow , 18 S.W.3d 584, 587-88 (Mo. App. W.D. 2000).
Discussion
In her sole point relied on, Mother contends that the annual custody arrangement set forth in the trial court's parenting plan is both unsupported by substantial competent evidence and contrary to the weight of the evidence.[2] We will first address whether the judgment is supported by substantial evidence.
The trial court found that an alternating year custody schedule would be in the best interests of the children. Pursuant to the requirements of § 452.375.2, the trial court made findings with respect to each of the statutory factors. Of particular relevance to the present appeal, the trial court found that "the children have loving and attentive stepsiblings"; "that each parent recognizes the children's need for frequent and meaningful contact with the other parent," but that Mother "has not made every effort to accommodate communication between [Father] and the children, while [Father] makes efforts to ensure daily communication between [Mother] and the children when the children are with [Father]"; and that the children travel frequently with Mother, that the parents have changed residences several times over the course of the children's lives, and that the children "seem to have adjusted well to each relocation and the frequent traveling."
*177 This Court certainly understands the desirability of maintaining continuity and stability for children of divorced parents. However, A.M. and B.M.'s parents have both been members of the armed services, with Father now remaining on active duty and Mother now in the National Guard. As the trial judge observed, they have grown accustomed to frequent moves and other disruptions to their routines. The trial court found that A.M. and B.M. have demonstrated an ability to acclimate well to changes in their environment and living situation. This finding was supported by substantial evidence, including the testimony of Father, Mother, and Stepmother.
The children have spent the past several years under an equal custody arrangement. The alternative parenting plans proposed by either parent would have considerably reduced one or the other parent's custodial time. There was substantial evidence (including the testimony of Mother and Father) that both parents provide a sound environment in which to raise these children. Father testified that a parenting plan that includes an equal division of parenting time is in the best interests of these children. In light of the benefit to the children of equal parenting time with each party and in light of the distance between the parties' residences necessitated by Father's military service, the trial court's order was supported by substantial evidence.
On appeal, Mother cites Carlton v. Walters , 294 S.W.3d 513, 515 (Mo. App. S.D. 2009), in support of her contention that the decision of the trial court was not supported by substantial competent evidence. However, the facts in Carlton are distinguishable from those at issue in this case. In Carlton , the mother intended to relocate from Missouri to Arkansas, while the father remained in Missouri. Id. Both parents sought custody of their young daughter for the school year period, with the other parent to receive visitation on certain weekends. Id. Each party proposed that the parents split custody on a week-on/week-off basis during the summertime. Id. The trial court in Carlton rejected both parties' parenting plans, "finding that the best interest of the child would be served by rotating physical custody annually between the parties." Id. at 516. The Carlton Court noted that the trial court's custody determination should not be disturbed "simply because it is unique, unfamiliar, or has not been previously considered...." Id. at 519. However, the Court went on to find that "no evidence" had been presented at trial concerning "the possible effects such a plan might or might not have upon [the child]." Id. Because it found no evidence to support a finding that the annually rotating custody arrangement was in the child's best interest, the Southern District reversed. Id. at 519-20.
Mother argues that Carlton requires reversal because no expert testimony was adduced at trial establishing the compatibility of the two school systems and the children's ability to handle what she terms "a drastic yearly shift." Carlton does not indicate that expert testimony is necessary, and, in fact, indicates that a plan should not be disturbed simply because it is unique or unfamiliar. We do not believe expert testimony was necessary to determine whether the annual rotation arrangement was in the children's best interests, and we will not upset a plan simply because it is unique or unfamiliar. In Carlton no party had proposed a rotating annual custody arrangement and there was a complete absence of evidence discussing the impact such an arrangement would have on the child's best interest. Conversely, in this matter Father did propose annually rotating custody and presented substantial evidence in support of that arrangement.
*178 A.M. and B.M.'s stepsiblings were attending North Pole Elementary School at the time of trial. Stepmother testified that North Pole Elementary School and the elementary school in Warrensburg are comparable in quality, that North Pole Elementary School is accommodating her autistic son's special needs, and that her son is actually performing "much better" academically in North Pole, Alaska, than he had been in Warrensburg, Missouri. There was no dispute that Father is actively involved in the children's education, helping them with their homework and attending parent-teacher conferences. Father's uncontroverted testimony indicated that Father initiated B.M.'s enrollment in speech therapy, and that he did so over Mother's objection. In short, there was substantial evidence that the school system in North Pole, Alaska, has a proven ability to meet special educational needs and that Father has a demonstrated capacity to navigate access to special resources that A.M. or B.M. may require.
The trial court gave specific consideration to the fact that Mother has historically not done her part to facilitate meaningful communication between the children and Father during Mother's custodial time. See § 452.375.2(4). On the other hand, Father testified that he encourages the children to call their mother or send her video-recorded messages every day while they live with him.
Father and Stepmother testified that A.M. and B.M. have a very close relationship with their stepsiblings. Father testified that his stepchildren live the majority of the time with their father during the summer and that under Mother's parenting plan B.M. and A.M. would have very limited time with their stepsiblings.
In this matter there was substantial evidence to support the annually rotating parenting plan, whereas there was no evidence in support of the annually rotating plan in Carlton . Because this judgment is supported by substantial evidence, we reject Mother's argument.
Mother's point on appeal also argues that the trial court's custody determination is against the weight of the evidence, which she believes supports her proposed parenting plan. This state's Supreme Court has held that "[t]he power to set aside a trial court's judgment on the ground that it is against the weight of the evidence should be exercised with caution...." Searcy v. Seedorff , 8 S.W.3d 113, 116 (Mo. banc 1999). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." Ivie v. Smith , 439 S.W.3d 189, 206 (Mo. banc 2014).
As the Court has detailed more fully above, substantial evidence supports the trial court's decree. In fact, "a claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." In re J.A.R. , 426 S.W.3d 624, 630 (Mo. banc 2014). Mother's evidence to the contrary essentially consists of her representation that her living situation is more stable than Father's because she does not intend to change her permanent residence, while Father has already moved out of state once and may move again in the future. Mother also argues that the children are used to the Warrensburg community; the children have made friends in Warrensburg; and the children have extended family in Nebraska, Florida, and Texas, but no family in Alaska. Mother notes that B.M. has special needs that are being appropriately addressed through an individualized education plan with his school in Warrensburg and asserts it *179 would be difficult for the children to change schools and homes every year.
" 'Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.' " Clayton , 387 S.W.3d at 444-45 (quoting Potts v. Potts , 303 S.W.3d 177, 184 (Mo. App. W.D. 2010) ).
This Court defers to the trial court's determination that Father and Stepmother's testimony was persuasive regarding Father's proposal to alternate years of residential placement for mailing and educational purposes, and that Mother's testimony (to the contrary) was less persuasive. We are not left with the firm belief that the trial judgment is wrong.
In that the judgment is supported by substantial evidence and is not found to be against the weight of the evidence, Mother's point is denied.
Conclusion
The judgment of the trial court is affirmed.
All concur.

All statutory references are to RSMo (2016) unless otherwise indicated.

At the threshold, we note that "no-substantial-evidence" challenges and "against-the-weight-of-the-evidence" challenges are distinct theories of appellate relief under Missouri law. Ivie v. Smith , 439 S.W.3d 189, 199 n. 11 (Mo. banc 2014). To be preserved for appeal, these two claims must be set forth in separate points relied on. Id. However, Mother combines them under a single point. While Mother's combination of her two claims under a single point is improper, we will "gratuitously address the merits of" those claims. Id.