

# In the
# Missouri Court of Appeals
## Western District

**IN RE THE MATTER OF: Y.R.H. BY AND THROUGH HER NEXT FRIEND J.N.H.,**
**Appellant,**

**v.**

**M.J.S.,**

**Respondent.**

**WD85773**
**OPINION FILED:**
**July 25, 2023**

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Susan E. Long, Judge

Before Division Two:  W. Douglas Thomson, Presiding Judge, Cynthia L. Martin, Judge,
Thomas N. Chapman, Judge

J.N.H. ("Father") appeals from the trial court's judgment declaring paternity, establishing child custody, and ordering child support for the parties' minor child ("Child").  Father asserts that the trial court committed error in adopting its own parenting time schedule to afford M.J.S. ("Mother") and Father with parenting time during alternating weeks.  Father claims that the trial court's finding that alternating

weeks of parenting time was in Child's best interests was not supported by substantial evidence and was against the weight of the evidence. Finding no error, we affirm.

## Factual and Procedural History[1]

Mother gave birth to Child in 2020 in Jackson County, Missouri. Father has acknowledged that he is the natural father of Child since her birth, and Father's name was included on Child's birth certificate.

On August 27, 2021, Father filed a petition seeking to establish paternity, legal custody, and parenting time pursuant to the Uniform Parentage Act[2] in the Circuit Court of Jackson County ("Petition"). The Petition stipulated that he is Child's natural father, alleged that it is in Child's best interests for Mother and Father to share joint physical and legal custody of Child, and asked the trial court to find Father's proposed parenting plan[3] to be in Child's best interests. Mother filed an answer on October 26, 2021 ("Answer"), in which she indicated that she did not agree with Father's proposed parenting plan and attached her own as an exhibit. Mother's parenting plan also proposed joint legal and physical custody, but proposed that Father have parenting time with Child every other weekend from 7 p.m. on Friday to 7 p.m. on Sunday, with Mother to have parenting time with Child at all other times.

---

[1]We view the facts in the light most favorable to the trial court's judgment. *Fessler v. McGovern*, 524 S.W.3d 208, 210 n.2 (Mo. App. W.D. 2017).
[2]Sections 210.817 to 219.854. All statutory references are to RSMo 2016 as supplemented through August 27, 2021, unless otherwise indicated.
[3]The legal file does not include a proposed parenting plan attached to the Petition.

The parties participated in court ordered mediation prior to trial. The mediator created a memorandum of understanding ("Memorandum of Understanding") based on the parties' discussions, which Mother filed with the trial court. The Memorandum of Understanding suggested that Father and Mother had agreed they would share joint legal and physical custody of Child; that Child would continue to attend a daycare in Columbia, Missouri; that Father would have parenting time every other weekend from 8 a.m. on Saturday to either the start time for daycare or school, or 6 p.m. on Monday; and that Father would pay $400 monthly in child support. Father contested that he agreed to the terms set forth in the Memorandum of Understanding.

During a bench trial on August 29, 2022, Father appeared, but Mother did not.[4] Father testified that, sometime after filing his Petition, he moved to St. Louis, Missouri and began working for Bi-State Metro, a public transit agency, as an electrician. Father further testified that Mother lived in Columbia, Missouri, where she worked for U.S. Bank. Father testified that he had been transporting Child back and forth from his home to Columbia because Mother did not have a working vehicle. Father requested that the trial court adopt his proposed parenting plan, a copy of which was entered into evidence as Exhibit 3.[5] Exhibit 3 proposed that Mother and Father share joint legal and physical custody of Child, and that Mother have parenting time every other weekend from Friday

[4]Father's attorney informed the trial court that he had received an email from Mother shortly before the trial began that indicated Mother could not attend the trial because she had a fever, and Child had an earache.

[5]Although Exhibit 3 is titled "Proposed Parenting Plan and Settlement Agreement," Father's attorney indicated at trial that Father and Mother had not reached a settlement.

at 9 a.m. to Sunday at 3:00 p.m. Father testified that he had familial support in the St. Louis area that would allow Child to have stability and a relationship with cousins. Father further testified that he had secured child care at the Third Presbyterian Baptist Church.

Father's father ("Grandfather") and Grandfather's long-term partner ("Grandfather's Partner") also testified at trial. Grandfather confirmed that Father had a strong and stable familial support system in St. Louis, and testified that he had been assisting Father in transporting Child from Mother's home in Columbia to Father's home in St. Louis. Grandfather's Partner testified that Father had a loving relationship with Child.

At the conclusion of the evidence, the trial court orally found that it was in Child's best interests to adopt Father's proposed parenting plan. The trial court directed Father's attorney to prepare a judgment. Father's attorney submitted a proposed judgment on September 26, 2022.[6]

Three days later, on September 29, 2022, the trial court entered a judgment and order of paternity, child custody, child support, and necessities ("Judgment"). The Judgment found that Father is Child's natural father and concluded that it was in Child's best interests for Mother and Father to share joint legal and physical custody, consistent with the position that had been taken by Father in his Petition and at trial, and by Mother's filings. However, the Judgment did not adopt either Father's or Mother's

---

[6]The proposed judgment is not included in the legal file, but the docket sheet indicates that it was submitted to the trial court on September 26, 2022.

proposed parenting time plan. Instead, the Judgment found that a parenting plan prepared by the trial court ("trial court's parenting plan") and incorporated in full in the Judgment was in Child's best interests. The trial court's parenting plan provided that "[C]hild shall alternate weeks with each parent from Sunday at 3 p.m. to the following Sunday at 3 p.m.," and that Father would continue transporting Child between homes until Mother has a licensed vehicle, at which time Father and Mother would exchange Child at a designated location between their respective homes.

Father appeals.

## Standard of Review

We review all court-tried cases, including a judgment in a paternity action, pursuant to the standard outlined in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Taylor v. Francis*, 620 S.W.3d 308, 311 (Mo. App. W.D. 2021). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 32). A no-substantial-evidence challenge and an against-the-weight-of-the-evidence challenge are distinct theories of relief that are proved differently. *T.G. v. D.W.H.*, 648 S.W.3d 42, 48 (Mo. App. E.D. 2022).

A claim that there was no substantial evidence to support the judgment is an assertion that "there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial] court's judgment as a matter of law." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). "When reviewing whether the [trial] court's judgment is supported by substantial evidence, [we] view the evidence in the light most favorable to the [trial]

5

court's judgment and defer to the [trial] court's credibility determinations." *Id.* We disregard all contrary evidence and inferences. *Id.*

An against-the-weight challenge, on the other hand, presupposes that there is sufficient evidence to support the trial court's judgment and concerns the persuasive value of the evidence. *Id.* at 205. A trial court's decision is against the weight of the evidence "only if the [trial] court ***could not have reasonably found***, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* at 206 (emphasis added). If the evidence supports two reasonable but different conclusions, we will not reverse the judgment because we are obligated to defer to the trial court's assessment of conflicting evidence and credibility, given its superior position to evaluate the evidence presented at trial. *Id.*

**Analysis**

Father challenges the Judgment in two points on appeal, both of which focus on the trial court's finding that alternating parenting time with Child on a weekly basis is in Child's best interests. In his first point on appeal, Father asserts that the Judgment's finding that alternating parenting time with Child on a weekly basis is in Child's best interests was against the weight of the evidence ("Point One"). Father's second point on appeal asserts that the Judgment's finding that alternating parenting time with Child on a weekly basis is in Child's best interests is unsupported by substantial evidence ("Point Two"). Because an against-the-weight-of-the-evidence challenge presupposes that there is sufficient evidence to support the judgment, we begin by addressing Point Two.

6

Before doing so, however, it is helpful to note that Father does not argue that the trial court was forbidden from adopting a parenting plan of its own despite orally stating on the record that it intended to adopt Father's proposed parenting plan. *See Saunders v. Bowersox*, 179 S.W.3d 288, 294 (Mo. App. S.D. 2005) (holding that written judgment controls in a civil case, and trial court's oral statements made in ruling an issue are generally disregarded as they are not a part of the judgment). Nor does Father contend that the trial court had no authority to adopt a parenting plan of its own in lieu of a parenting plan proposed by one of the parties. *See Hall v. Hall*, 336 S.W.3d 188, 194-95 (Mo. App. W.D. 2011) (observing that the trial court rejected the proposed parenting plans of father, mother and guardian ad litem, and instead adopted its own parenting plan). Finally, Father does not contend that the trial court committed reversible error by failing to make sufficient findings regarding its rejection of the parties' proposed parenting plans in lieu of the adoption of its own. *Cf. Hall*, 336 S.W.3d at 194-95 (where judgment failed to identify factors which led trial court to adopt its own parenting plan after rejecting the parties' proposed parenting plans in violation of section 452.375.6). Nor could Father successfully raise this argument on appeal as he failed to challenge the sufficiency of the trial court's required statutory findings in a Rule 78.07(c) motion to amend the judgment. *See Wennihan v. Wennihan*, 452 S.W.3d 723, 736 (Mo. App. W.D. 2015) (holding that mother's failure to file a Rule 78.07(c) motion to amend the judgment to challenge trial court's failure to make detailed findings about why it rejected the parties' proposed parenting plans in lieu of adopting its own preserved nothing for

7

appellate review). Instead, Father's complaints on appeal are limited to whether there is evidentiary support in the record for the trial court's parenting plan.

In Point Two, Father asserts that, because the only evidence presented at trial concerning the best interests of the child was his evidence, including his proposed parenting plan (Exhibit 3), there was no evidence from which the trial court could have concluded that a parenting plan that alternated weeks of parenting time was in Child's best interests. We disagree.

The Judgment expressly referred to Father's and Mother's proposed parenting plans. Though Mother did not attend the trial, she did file an answer to Father's Petition and attached her own proposed parenting plan. In addition, Mother submitted the Memorandum of Understanding prepared by the mediator after the parties participated in court-ordered mediation. The evidence before the trial court was not, therefore, limited to Father's trial testimony and exhibits. *See, e.g., K.O. Real Estate, LLC v. O'Toole*, 291 S.W.3d 780, 789 (Mo. App. E.D. 2009) (recognizing that, pursuant to Rule 55.12, an exhibit to a pleading is part of the pleading for all purposes).

Based on the evidence properly before the trial court, the trial court found that Father and Mother "have exhibited the ability and willingness to perform their functions as Mother and Father for the needs of [Child]," and that "[d]uring the pendency of this action there has been a physical distance between Mother and Father's home yet the parents have worked together to make sure the child spent time with each parent and had her needs met, despite the absence of a Court order." The trial court also found that "[b]oth parents have taken steps to make sure the child has a relationship with both

8

parents." And the trial court found that Child "was adjusted to her current daycare and at her home with each parent." In addressing the parenting plans proposed by the parties, the trial court noted that each parent proposed a plan for Child to be with that parent during the week, and with the other parent on alternating weekends. The trial court found that neither plan "provide[d] either parent with any period of extended time with [Child]." Finally, the trial court found that Child was only two years old and not of an age to express her wishes with respect to the time spent with her parents.

Based on these findings, the trial court found that Child "shall alternate weeks with each parent from Sunday at 3 p.m. to the following Sunday at 3 p.m.," and further found that its parenting plan was in the best interest of Child. The trial court further found that "[d]ue to the amount of time [Child] will spend with each parent . . . it is just and appropriate that neither parent pay child support to the other."

By adopting a parenting plan that allowed Child to spend a week with each parent before going to the other parent's home, the trial court maximized the time Child spent with each parent without increasing the burden of transporting Child between homes. Accordingly, we conclude that the Judgment's adoption of the weekly rotating parenting plan is supported by substantial evidence.

Father relies heavily on *Carlton v. Walters*, 294 S.W.3d 513 (Mo. App. S.D. 2009), to support his position that the trial court's adoption of its own parenting plan was not supported by substantial evidence. However, *Carlton* is readily distinguishable on its facts.

9

In *Carlton*, mother and father lived in different states following mother's relocation. *Id.* at 515. In moving to modify the previously entered parenting plan, mother proposed a new parenting plan for the parties' school-age child that would give mother parenting time during the school year, with father having parenting time on certain weekends, and alternating weeks of parenting time during the summer months. *Id.* at 515. Father's proposed parenting plan was the mirror image of mother's proposed parenting time. *Id.* at 515-16. The trial court rejected both parents' proposed parenting plans and instead found that the child's best interests would be served by rotating parenting time annually so that the child would change school districts every year. *Id.* at 516.

The father appealed, and argued that the trial court's finding that alternating parenting time on an annual basis was in the child's best interests was not supported by substantial evidence. *Id.* at 518. Our Southern District held that because "there was no mention during the trial of the possibility of an annual rotation schedule and, consequently, no evidence as to the possible effects such a plan might or might not have upon [the child]," the judgment was not supported by substantial evidence. *Id.*

Father argues that *Carlton* compels the same outcome here, as neither party requested an alternating week parenting time arrangement and no testimony about the impact of such an arrangement on Child was elicited. We disagree. *Carlton* does not stand for the proposition that a trial court ordered parenting plan that has not been expressly discussed in the evidence is not supported by substantial evidence as a matter of law. Instead, *Carlton* focused on whether the trial court had evidence before it to

10

support the trial court's conclusion that a highly unusual annually rotating parenting plan would be in the child's best interests, given that it would require the school age child to transfer between a Missouri school and an Arkansas school every year despite the absence of any evidence regarding "the compatibility of the two school systems or the ability of [Child] to navigate two different academic curricula." 294 S.W.3d at 519. Here, in stark contrast, Child is only two, and was found to be well-adapted in both of her parents' homes. Though the trial court's parenting plan alternates Child between Father and Mother weekly, the only meaningful impact is a positive one, as the effect is to roughly equalize the amount of time Child spends with each parent. Unlike the circumstances in *Carlton*, there were no consequences to Child by the adoption of a weekly rotating parenting schedule that were unexplored by the evidence.

Point Two is denied.

Because we conclude that the Judgment's finding that an every-other-week parenting schedule is in Child's best interests was supported by substantial evidence, we move to Point One to consider Father's assertion that the same finding was against the weight of the evidence. "The against-the-weight-of-the-evidence standard serves only as a check on a [trial] court's potential abuse of power in weighing the evidence, and [we] will reverse only in rare cases, when [we] ha[ve] a firm belief that the decree or judgment is wrong." *Trueblood v. Mulvihill*, 563 S.W.3d 172, 178 (Mo. App. W.D. 2018) (quoting *Ivie*, 439 S.W.3d at 206). To raise an against-the-weight-of-the-evidence challenge, an appellant must do each of the following:

11

(1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Sporleder v. Sporleder*, 655 S.W.3d 1, 14 (Mo. App. W.D. 2022) (quoting *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014)).

As we already explained, substantial evidence supported the Judgment's finding that a weekly rotating parenting schedule was in Child's best interest. However, Father points to three facts established by the evidence that are contrary to the Judgment's conclusion that a weekly rotating parenting schedule is in Child's best interest: (1) Father's testimony that his proposed parenting plan, which allowed Mother to have parenting time with Child every other weekend from Friday to Sunday, fit his work schedule; (2) Father's testimony that his proposed parenting plan was intended to give Child a stable life in St. Louis; and (3) Father's testimony about Mother's inability to provide transportation for Child. This evidence does not persuade us that the trial court's finding that an alternating week parenting plan is in Child's best interests is against the weight of the evidence.

Grandfather's testimony established that Father worked Sunday to Wednesday every week, and that Grandfather had been transporting and would continue to transport Child on Sundays between St. Louis and Columbia until Mother had a means for transporting Child to and from a designated exchange point. Father's proposed parenting schedule provided that Child be with Mother every other weekend from Friday at 9 a.m.

12

to Sunday at 3 p.m., so that during every two-week period, Father would drive Child from St. Louis to Columbia once on a Friday morning and Grandfather would drive Child from Columbia to St. Louis on a Sunday afternoon. The parenting schedule adopted by the Judgment, however, provided that Child would rotate between the Mother's and Father's homes weekly at 3 p.m. on Sundays. During every two-week period, therefore, Grandfather would drive Child between St. Louis and Columbia two times. Under either Father's proposed parenting schedule or the schedule adopted in the Judgment, the time spent transporting Child is the same. The only difference is that, due to Father's work schedule, he would be working when Child needed transportation on Sunday between her parents' respective homes. Because Grandfather testified that he would continue assisting Father in transporting Child on Sundays when Father was working and was willing to continue transporting Child between St. Louis and Columbia until Mother secured a means of transportation, we are not persuaded that the trial court's conclusion that an every-other-week parenting schedule was in Child's best interest was wrong.

Moreover, given that the parenting schedule adopted by the trial court gave Child equal time with Father and Mother, evidence that it was the intention of Father's parenting plan to give Child a stable life in St. Louis does not lead us to conclude that the trial court was wrong in concluding that Child's best interest is served by alternating weeks between Mother's home in Columbia and Father's home in St. Louis. The evidence at trial established that Child is well adjusted to both of her parents' homes, so adopting a parenting plan that allowed Child to spend extended time in both homes was not against the weight of the evidence.

13

Point One is denied.

## Conclusion

The Judgment is affirmed.

_Cynthia L. Martin_
_____
Cynthia L. Martin, Judge

All concur