

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STEVEN MICHAEL FIRMAND, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | |
| v. | ) | No. SD37019 |
| | ) | |
| UNIVERSITY OF MISSOURI, | ) | **Filed:  July 13, 2021** |
| | ) | |
| Employer-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| | ) | |
| Respondent-Respondent. | ) | |

APPEAL FROM THE LABOR AND
INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Steven Michael Firmand ("Claimant") appeals the decision of the Labor and

Industrial Relations Commission ("the Commission") denying his claim for unemployment

benefits.  Claimant asserts that the denial was erroneous because the facts found by the

Commission proved that Claimant left his employment for good cause attributable to the

work or his employer as a matter of law.  Finding no merit in that claim, we affirm.

## Background

In May 2016, Claimant was employed as Director of Learning and Organizational Development at the University of Missouri ("Employer") and received an annual salary of $166,000. On May 22, 2019, Claimant's supervisor informed Claimant that he "was just not getting the job done[.]" The supervisor told Claimant that he was being demoted from his director position, that his salary was being reduced to an annual rate of $140,000, and that he would be discharged in six months. Claimant felt humiliated by the demotion, and he soon left his employment, claiming that he had accepted an offer from his supervisor to receive a "severance package if he left ahead of his termination in six months."

Claimant filed for unemployment benefits, and the Division of Employment Security ("the Division") denied his claim on the ground that he left work voluntarily but not for good cause attributable to the work or Employer. Claimant appealed that decision to the Commission, which affirmed and adopted the decision of the Division.

## Standard of Review

> This Court reviews all final decisions, findings, rules, and orders of the Commission to determine "whether the same are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. The Commission's decision will be affirmed unless: "(1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *White v. ConAgra Packaged Foods, LLC*, 535 S.W.3d 336, 338 (Mo. banc 2017); § 287.495.1, RSMo 2000.[] "Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." § 287.495.1, RSMo 2000. In addition to findings of fact, this Court also defers to the Commission's determinations as to credibility of witnesses and the weight given to conflicting evidence. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015).

*Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020).

**Analysis**

Assuming, without deciding, that Claimant can bring this appeal after asserting that he had negotiated and accepted a severance package that changed what Employer had originally told Claimant was going to occur, we proceed to an analysis of Claimant's two, interrelated points. The first claims the Commission erred in finding that Claimant left his employment voluntarily. His second, alternative point claims that even if Claimant did voluntarily leave his employment, the Commission erred in concluding that he did not have good cause to do so.

Claimant had the burden of proving both assertions. *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 638 (Mo. App. W.D. 2013).

> When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871 (Mo.1963). If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. *Id.* "Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it." *Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App.1999) (internal citations omitted).

*White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010).

Thus, a decision against Claimant, as the party with the burden of proof, does not require any evidence supporting it. *Id. See also **Annayeva**,* 597 S.W.3d at 200 n.8 ("only factual findings that are necessary to make an award for the employee must be supported by competent and substantial evidence on the whole record" (citations omitted)).

*Point 1*

Claimant's first point asserts that

> the facts found by the Commission were not supported by substantial evidence *and* the Commission misapplied the law, in that the evidence established that [Claimant] was constructively discharged when he was

3

demoted from a director[-]level to an entry[-]level employee, stripped of his leadership duties, removed from his office, and demoted in pay approximately $26,000.[1]  (Emphasis added.)

Whether an individual was discharged or voluntarily left employment is a factual determination, ***Lindsey v. Univ. of Mo., Div. of Emp't Sec.***, 254 S.W.3d 168, 170-71 (Mo. App. W.D. 2008), and in contradiction to his point, Claimant admits in his brief that he accepted a severance package and left his job voluntarily.[2]

In regard to the point's legal claim, the Commission correctly notes in its brief that Missouri's statutory employment security law does not recognize "constructive discharges" -- the relevant issue is "whether the claimant had good cause attributable to the work or the employer to leave work voluntarily" -- the subject of Claimant's second point. *See **Richard v. L & S Langco Props., L.L.C.***, 350 S.W.3d 469, 472 (Mo. App. S.D. 2011).[3]

Point 1 is denied.

*Point 2*

Claimant's second point claims the Commission committed reversible error in finding that he voluntarily resigned "because the evidence before the Commission supported a finding that even if [Claimant] left his employer voluntarily, he did so for good cause[.]"

---

[1] Claimant's first point improperly asserts two different claims in a single point – a substantial-evidence claim and a misapplication-of-the-law claim. *See **Trueblood v. Mulvihill***, 563 S.W.3d 172, 176 n.2 (Mo. App. W.D. 2018).  We exercise our discretion to review the claims *ex gratia*. ***Id.***

[2] An employee leaves work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or laid off. ***Kimble***, 388 S.W.3d at 640.

[3] The two terms have similar meanings, but "constructive discharge" is more commonly utilized in the labor and employment context, and it is said to occur when an employer deliberately renders an employee's working conditions so intolerable that the employee is forced to quit. *See **Gamber v. Mo. Dept. of Health & Senior Servs.***, 225 S.W.3d 470, 477 (Mo. App. W.D. 2007).  The underlying thread of all of Claimant's arguments is that he "did not leave of his own accord because the pressure of circumstances and extraneous factors compelled him to terminate his relationship with [Employer]."

4

"Good cause" means "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Bunch v. Div. of Employment Sec.,* 965 S.W.2d 874, 878 (Mo.App. W.D.1998) (quotation marks omitted). . . . The two elements of good cause are reasonableness and good faith. [*Id.*] The employee's action is reasonable only if she proves her concerns are real or a reasonable worker would have them. *Id.* The actions are in good faith if she shows "that an attempt was made to resolve the dispute before [she] took the drastic step of quitting the job." *Id.*

*Miller v. Bank of the West*, 264 S.W.3d 673, 678 (Mo. App. W.D. 2008).

The factual findings of the Commission relevant to good cause were that Claimant found his demotion and exclusion from managers' meetings humiliating, and his $166,000 annual salary rate was reduced by $26,000 (15.7%) to $140,000.[4]

The Commission's legal conclusion was that these facts did not constitute good cause to leave work as Claimant could have continued to work for Employer while he sought other employment, and the 15.7% reduction in pay was not substantial when compared to the 44% reduction at issue in *Armco Steel Corp. v. Labor & Indus. Rels. Comm'n*, 553 S.W.2d 506, 508 (Mo. App. K.C.D. 1977). Claimant does not contest the Commission's factual findings as fraudulent or unsupported by competent and substantial evidence. Rather, he argues that the Commission's findings constituted good cause attributable to Employer to leave work voluntarily as a matter of law – a claim we review *de novo*. *Miller*, 264 S.W.3d at 678.

---

[4] Claimant relies on other evidence he claims are "facts" supporting his claim of good cause, but Claimant's burden of persuasion required him "to convince the fact-finder to view the facts in a way that favor[ed] [him]." *Annayeva*, 597 S.W.3d at 200 n.8 (quoting *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)). Here, it is clear that, as in *Annayeva*, Claimant failed to meet that burden. For example, Claimant testified that although he had previously demonstrated exemplary performance, he was abruptly forced to return to an "entry-level employee" and was being discriminated against due to his age. The Commission was free to disbelieve that testimony, which it implicitly did by not including these assertions in the Commission's factual findings. *See Krispy Kreme Doughnut Corp.*, 488 S.W.3d at 67 (the Commission may disregard evidence it finds not credible, even if there is no countervailing evidence to dispute it), and the Commission's findings of fact – if supported by competent and substantial evidence and in the absence of fraud – are binding on this court. *Annayeva*, 597 S.W.3d at 198; *Heavy Duty Trux Ltd. v. Labor & Indus. Rels. Comm'n*, 880 S.W.2d 637, 640 (Mo. App. W.D. 1994).

In support of that argument, Claimant chiefly relies upon ***Mickles v. Maxi Beauty Supply, Inc.***, 566 S.W.3d 274 (Mo. App. E.D. 2019). The employer in ***Mickles*** abruptly eliminated the claimant's position of General Manager of Human Resources without any prior notice. ***Id.*** at 278. The employer then denied the claimant's request to stay on in a managerial position, even though she had extensive experience as a manager, and instead offered her only a starting-level position with less pay and only weekend hours. ***Id.***

The Eastern District concluded in ***Mickles*** that the claimant had good cause to leave that employment as she would have sustained a loss of about 25% of her weekly earnings, bringing her within the range of other cases that had found good cause. ***Id.*** at 279 n.3 (citing ***Armco Steel Corp.***, 553 S.W.2d at 507-08). It also found that the claimant would have been forced to work in "much less favorable working conditions and schedule" in that she could no longer bring her child to work (thereby saving on childcare expenses), and she would have been forced to return to an entry-level position.[5] ***Id.*** at 278-79.

Here, Claimant's substantial salary was reduced by only 15.7%, and Claimant fails to cite anything in the record that would support his claim that he was demoted to an "entry[-]level employee[.]" We agree with the Commission that Claimant's case is closer to ***Armco Steel Corp.*** than to ***Mickles***. In ***Armco Steel Corp.***, the 44% reduction at issue

---

[5] Claimant also relies on ***Sokol v. Labor & Indus. Rels. Comm'n***, 946 S.W.2d 20 (Mo. App. W.D. 1997). However, that case is inapposite, as the claimant there

> was discharged for refusing to accept a new contract which . . . substantially changed his terms of employment. . . . [H]e specifically refused to allow the employer to consider his refusal to sign the new contract as a resignation, stating that he wanted to continue employment under his initial contract. It was the employer who decided to terminate [the claimant] rather than have him continue to work under his existing contract.

***Id.*** at 25 (citation omitted).

was contrasted with pay reductions of 21% and 16% that the court concluded were insufficient to support a claim of good cause.[6] 553 S.W.2d at 508.

Based upon the Commission's factual findings and the analogous case law, the Commission did not err as a matter of law in concluding that Claimant did not leave his employment for good cause attributable to the work or Employer.

Point 2 is also denied, and the decision of the Commission is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

GARY W. LYNCH, J. – CONCURS

---

[6] We recognize that a "percentage analysis on its own cannot in every case be considered determinative[.]" *Mickles*, 566 S.W.3d at 279 n.3. However, the rationale for this principal actually disfavors Claimant's argument, "because an equal-percentage loss in pay will always fall more harshly on the less well-compensated of two individuals, perhaps severely so." *Id.* Claimant, who was offered six-months to work at a salary of $140,000 per year, was a well-compensated individual as compared to someone like the claimant in *Mickles*, who would have earned $10 an hour. *Id.* at 278.